**STATE of Maine**

**v.**

**Chester COOK.**

Supreme Judicial Court of Maine.

Submitted on Briefs Sept. 19, 1990.

Decided Oct. 18, 1990.

Mary Tousignant, Dist. Atty., Alfred, for the State.

Robert A. Levine, Portland, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD, COLLINS and BRODY, JJ.

BRODY, Justice.

Defendant Chester Cook appeals from his convictions of burglary, 17–A M.R.S.A. § 401 (1983 & Supp.1989), and assault, *id.* § 207, following a jury trial in Superior Court (York County, *Broderick, J.*). Cook

contends that the court erred in failing to sever his trial from that of the co-defendant, Bruce Creeger;[1] admitting into evidence photographs not made available to Cook prior to trial; and denying his motion for acquittal on the burglary charge on the ground that the jury's verdict lacked the support of sufficient evidence. We find no error in the court's rulings and affirm the convictions.

The facts underlying this appeal were described in *State v. Creeger*, 576 A.2d 757, 758 (Me.1990). On October 30, 1988, James Gregoire was awakened by two intruders who entered his Biddeford home looking for his roommate. *Id.* When Gregoire was unable to provide the information the intruders demanded, he was beaten. *Id.* In his initial statement to the police, Gregoire was able to identify Chester Cook by name and described Creeger as the same individual he had seen outside his home earlier that day or a previous one. *Id.* At the joint trial of defendants Cook and Creeger, Gregoire testified that he recognized Chester Cook as the boyfriend of one of his former roommates, Vickey Darrah, and that while he was being beaten he heard Creeger say "how can you do this to my friend Chester?"

The argument, here urged by Cook, that the Supreme Court's decision in *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), mandates severance of a joint trial in contemplation of the introduction of a statement made by one perpetrator of a crime to another during and in furtherance of the commission of the crime was rejected by this court in *State v. Creeger*, 576 A.2d at 759. Creeger's extrajudicial statement inculpating Cook was made during the commission and in furtherance of the crime. Such a statement is not hearsay and is admissible against both the declarant and codefendant Cook. M.R.Evid. 801(d)(2)(E). Therefore,

the rationale for requiring severance, namely, the ineffectiveness of a limiting instruction, is not implicated on these facts. *State v. Creeger*, 576 A.2d at 759. Moreover, Creeger took the stand and testified at trial and Cook had ample opportunity to cross-examine him about the statement but elected not to do so. The facts of this case simply do not present the sixth amendment concerns at issue in *Bruton*. There was no error in the trial court's decision to continue with the joint trial.

Cook also contends that sua sponte severance by the trial court was required because Creeger and Cook had antagonistic defenses; specifically, Cook had an alibi witness and Creeger did not.[2] As we noted in *State v. Creeger*, "[j]oint trials are generally favored in the interest of conserving judicial resources, avoiding duplicative trials, minimizing the public expenditure of funds and promptly bringing the accused to trial." *State v. Creeger*, 576 A.2d 757 (Me.1990); *State v. Anderson*, 409 A.2d 1290, 1297 (Me.1979) (*citing United States v. Barber*, 442 F.2d 517, 529 (3d Cir.), *cert. denied*, 404 U.S. 958, 92 S.Ct. 327, 30 L.Ed.2d 275 (1971)). A joint trial may be severed by the trial court acting on its own motion, however, if it becomes apparent that one defendant will be prejudiced due to the existence of an antagonistic defense of the other. *State v. Anderson*, 409 A.2d at 1297 n. 5. This court reviews the trial court's decision not to sever only for obvious error or manifest injustice. *Cf.*, *State v. Millett*, 392 A.2d 521, 529 (Me.1978). The record does not indicate that Cook was prejudiced because he had an alibi witness and Creeger did not. We find no error or manifest injustice in the court's decision to continue with the joint trial.

Cook contends that the court erred by admitting in evidence photographs that depict Gregoire's injuries because the pho-

---

1. Although the record is unclear, Cook appears to have implicitly joined in co-defendant Creeger's pretrial request for severance. The request was denied by the Superior Court and was not reasserted during the course of the trial. On appeal, Cook contends that the Superior Court had a duty to sever the trial sua sponte.

2. At trial, Vickey Darrah testified that Cook was with her at her apartment but that Creeger had left the apartment shortly before the time of the assault.

tographs were not made available to Cook's attorney in advance of trial as required by M.R.Crim.P. 16(b). Rule 16(b) provides that, upon request, the attorney for the State must allow a criminal defendant access to material, including photographs, within the State's possession or control. *Id.* The purpose of the rule is to prevent unfair surprises at trial. *State v. Dechaine*, 572 A.2d 130, 135 (Me.1990). Sanctions, including exclusion of the evidence, may be imposed upon the State for failure to comply with Rule 16(b) but the decision whether to impose a sanction is committed to the discretion of the trial court and will not be overturned on appeal absent a clear showing of abuse of discretion. *State v. Landry*, 459 A.2d 175, 177 (Me.1983). To establish an abuse of discretion, an appellant must show that he was, in fact, prejudiced by the Rule 16(b) violation and that the prejudice rose to the level of depriving him of a fair trial. *State v. Caulk*, 543 A.2d 1366, 1370 (Me.1988); *State v. Reeves*, 499 A.2d 130, 133 (Me.1985).

The court found that the State's failure to provide the photographs to the defendants was excusable because the existence of the photographs was unknown to the State until the morning of trial and allowed the photographs to come into evidence based on Gregoire's testimony that the photographs fairly and accurately represented the injuries he received as a result of the assault. The court rejected Cook's contention that an examination of the photographs prior to trial might have revealed that they had been altered by the victim or that the injuries shown could have resulted from a fall rather than an assault. Instead, the trial court allowed the jury to give the photographs proper evidentiary weight based on their assessment of Gregoire's credibility. The record fails to demonstrate that Cook was prejudiced or deprived of a fair trial by the admission of the photographs. We find no abuse of discretion in the court's decision to admit them.

■ Finally, Cook contends that the court erred when it denied his motion for acquittal on the burglary charge because the evidence presented at trial was legally insufficient to support the jury's verdict. To determine whether there was sufficient evidence produced at trial to sustain a guilty verdict, the court inquires whether, viewing all evidence in the light most favorable to the prosecution, the trier of fact could rationally find that the prosecution proved, beyond a reasonable doubt, every element of the offense charged. *State v. Lovejoy*, 493 A.2d 1035, 1037 (Me.1985). This court will not substitute its judgment of the credibility and weight of particular witnesses and their testimony for the judgment of the jury. *Id.*

The elements of burglary are set forth in 17-A M.R.S.A. § 401: "A person is guilty of burglary if he enters or surreptitiously remains in a structure, knowing that he is not licensed or privileged to do so, with the intent to commit a crime therein." Class B burglary, with which Cook was charged, involves intentionally or recklessly inflicting or attempting to inflict bodily injury on anyone during the commission of the burglary. *Id.* § 401(2)(B).

Cook has not challenged the sufficiency of the evidence establishing that he entered Gregoire's home on the evening of October 30, 1988 with the intent to commit assault. Cook merely contends that he believed he was privileged to enter Mr. Gregoire's home and that the State failed to prove otherwise. The record reveals, however, that the jury was presented with more than enough evidence to support a conclusion that Cook entered Gregoire's home knowing he was not licensed to do so. Gregoire testified that the doors to his home were locked and that the intruders "kicked or pushed in [the back door] because the lock, [sic] the screws were pushed out and dangling. The latch piece that screwed in on to the frame was ripped right out. The fascia board was pulled out partly and a chunk of it was gone." Gregoire also testified that, although Cook had come into his home on prior occasions, he did so only as a guest of Ms. Darrah and was not otherwise entitled to enter. Gregoire further testified that Ms. Darrah had moved out of the apartment, no longer paid rent and that only a few of her belongings remained.

Gregoire added that Robert Kennedy, his roommate at the time of the assault, was having a problem with Cook and that a peace bond was in effect to protect Kennedy from Cook. Based on this testimony, there was sufficient evidence from which the jury could conclude that the State had proven, beyond a reasonable doubt, that Cook entered the apartment knowing he was not licensed to do so. Cook's motion for acquittal on the burglary charge was properly denied.

The entry is:

Judgments affirmed.

All concurring.