**STATE of Maine**

v.

**Michael M. MANNION.**

Supreme Judicial Court of Maine.

Argued Nov. 16, 1993.
Decided Feb. 3, 1994.

Donald W. Macomber (orally), Asst. Atty. Gen., Augusta, for the State.

Thomas F. Hallett (orally), Portland, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, COLLINS, RUDMAN and DANA, JJ.

COLLINS, Justice.

Michael M. Mannion appeals from a judgment entered in the Superior Court (Cumberland County, *Brennan, J.*) following a jury verdict finding him guilty of murder. 17–A M.R.S.A. § 201(1)(A) (1983). Mannion argues that: 1) the State committed a discovery violation; 2) the trial court erred in refusing to approve his request, as an indigent accused, for funds for experts; 3) the State engaged in prosecutorial misconduct; 4) the trial court erred in admitting the taped interrogation of Mannion in evidence and in sending the tape and transcript to the jury room; and 5) there was insufficient evidence to support the verdict. Finding no error, we affirm the judgment.

On Christmas Day, 1990, William Lewis died as the result of a gunshot wound. The bullet came from a rifle which was owned by Mannion and which was held by Mannion when it discharged. Mannion told two officers that the gun had fired accidentally while he was preparing to clean it, that he did not know it was loaded, and that he was holding it in one hand when it discharged. After these statements, a Maine State Police detective began a four hour interrogation of Mannion. For most of the interrogation, Mannion adhered to the accidental version of the shooting. At the end of the interrogation, Mannion stated that he got the gun to scare the victim, that he was holding the gun in both hands, that he knew the gun was loaded, and that he aimed the gun at the victim and pulled the trigger. Mannion was charged with murder. At the close of the State's case, Mannion moved for a judgment of acquittal which was denied. The jury returned a guilty verdict. After the verdict, Mannion filed a motion for a judgment of acquittal or a new trial. At that time, a motion to dismiss, filed by Mannion during trial, was still pending. Following the trial court's denial of his motion to dismiss, motion for judgment of acquittal, and his motion for a new trial, Mannion filed this appeal.

1. M.R.Crim.P. 16(b) provides, in part:

(1) *Duty of the Attorney for the State.* Upon the defendant's written request, the attorney for the state, except as provided in subdivision (3), shall allow access at any reasonable time to those matters specified in subdivision (2) which are within the attorney for the state's possession or control. The attorney for the state's obligation extends to matters within the possession or control of any member of the attorney for the state's staff and of any official or employee of this state or any political subdivision thereof who regularly reports or with reference to the particular case has reported to the attorney for the state's office. In affording this access, the attorney for the state shall allow the defendant at any reasonable time and in any reasonable manner to inspect, photograph, copy, or have reasonable tests made.
(2) *Scope of Discovery.* The following matters are discoverable:
(A) Any books, papers, documents, photographs (including motion pictures and video tapes), tangible objects, buildings or places, or copies or portions thereof, which are material to the preparation of the defense or which the attorney for the state intends to use as evidence in any proceeding or which were obtained or belong to the defendant; ...

(4) *Continuing Duty to Disclose.* If matter which would have been furnished to the defendant under this subdivision comes within the attorney for the state's possession or control after the defendant has had access to similar matter, the attorney for the state shall promptly so inform the defendant.

### Discovery Violation

◼ Mannion argues that the trial court erred in denying his motion for a new trial based on an alleged violation of M.R.Crim.P. 16(b).[1] He claims that the State committed a discovery violation by failing to disclose promptly the existence of a bullet hole in the couch upon which Lewis was sitting at the time of the shooting.[2]

The decision whether to impose a sanction on the State for failure to comply with Rule 16(b) is a matter for the trial court and will not be overturned absent a clear showing of an abuse of discretion. "To establish an abuse of discretion, [the defendant] must show that he was, in fact, prejudiced by [a] Rule 16(b) violation and that the prejudice rose to the level of depriving him of a fair trial," ...

*State v. Tibbetts*, 604 A.2d 20, 23 (Me.1992). "The purpose of [Rule 16(b)] is to prevent unfair surprises at trial." *State v. Cook*, 581 A.2d 415, 417 (Me.1990). We have considered a defendant's failure to pursue corrective action in response to an alleged 16(b) violation in finding no abuse of discretion. *See Tibbetts*, 604 A.2d at 23; *State v. Flick*, 577 A.2d 1192, 1194 (Me.1990); *State v. Vanassche*, 566 A.2d 1077, 1079 (Me.1989).

2. One officer testified that he had observed a hole in the couch where the victim was seated when he was shot and that there were red specks around the hole. A copper bullet fragment was found near the hole. The officer reported this hole to two other officers. However, he failed to mention the existence of this hole in his report because he felt that it had no evidentiary significance. About a week after the shooting, the defense attorney and the defense's expert were allowed to examine the couch although they failed to discover the hole. The Defendant never filed a motion to preserve the couch and the couch was later released to Lewis's family. The Defendant was aware of the hole by November, 1991. The trial began on March 9, 1992.

Without deciding whether a discovery violation occurred, we conclude that Mannion was not prejudiced because he knew about the existence of the hole several months before trial and had the opportunity to examine the couch soon after the shooting. In addition, it is likely that any evidence obtained by a ballistics expert would be inadmissible. Thus, the denial of Mannion's motion to dismiss was not an abuse of discretion.

Mannion also argues that the failure to disclose earlier the existence of the hole constitutes a violation of the Due Process Clause of the U.S. Constitution. He cites *Boyde v. California*, 494 U.S. 370, 381 n. 4, 110 S.Ct. 1190, 1198 n. 4, 108 L.Ed.2d 316 (1990) that states: "... failure of the prosecution to disclose allegedly exculpatory evidence to the defense violates due process 'only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" Given the facts of this case, we find that it is not reasonably probable that the result would have been different had the existence of the hole been disclosed earlier.

### Expert Funds

■ Mannion claims that the trial court erred by not granting all the fees requested for a psychiatric expert and for a ballistics expert.

[A]n indigent accused requesting public funds for experts must first show the trial court, to the extent he reasonably can then be expected to do so, why the services are necessary for an adequate defense; to appeal successfully from a denial of his request for funds, he must have been substantially prejudiced by the action of the trial court.

*State v. Anaya*, 456 A.2d 1255, 1263 (Me. 1983); *see also, State v. Barrett*, 577 A.2d 1167, 1169 (Me.1990); *State v. Gordius*, 544 A.2d 309, 310 (Me.1988); *State v. Lambert*, 525 A.2d 1043, 1044 (Me.1987). Mannion claims that he was denied the psychiatric funds necessary to present an adequate defense. The psychiatric expert's testimony was used to present evidence showing that the confession was not voluntary. Mannion was granted $4,000 to spend on psychiatric

experts. Mannion's expert did testify at trial to present the "involuntary" argument. Given the facts of this case, we conclude that Mannion was not substantially prejudiced. Regarding the fees requested for a ballistics expert, we conclude that Mannion failed to show why they were necessary for an adequate defense.

### Prosecutorial Misconduct

■ During the State's cross-examination of Mannion's psychiatric expert, the trial court instructed the State to refrain from discussing the magnitude and length of the psychiatric expert's report since Mannion was not granted all the funds that had been requested. Following this bench conference, the State cross-examined the expert regarding the factors considered by him in preparing the report. Mannion objected to the cross-examination when the State asserted that the expert "overlooked a lot" of information. The trial court did not sustain this objection. Mannion claims that the trial court erred in allowing the State to contrast the time spent by the State's expert examining Mannion with that spent by Mannion's expert. As such, the Defendant argues that he was deprived of a fair trial.

"A trial justice enjoys broad discretion in determining the scope and manner of cross-examination. The exercise of that discretion will be upheld on appeal unless it interferes with the rights of the parties to a fair trial." *State v. Cooper*, 617 A.2d 1011, 1015 (Me. 1992) (citations omitted); *see* M.R.Evid. 611(a). The trial court directed the State to refrain from commenting on length. It did not instruct the State to refrain from any examination regarding the content of the report. Further, because the trial court overruled Mannion's objection, it is clear that it did not find the State's line of questioning improper. The cross-examination did not deprive Mannion of a fair trial. Moreover, the record of the State's final argument discloses neither obvious error nor prosecutorial misconduct.

### The Taped Interrogation

■ Mannion argues that the trial court erred in admitting the taped interrogation in

evidence. He claims that the statements of the interrogating officer on the tape constituted inadmissible opinion testimony and inadmissible hearsay. M.R.Evid. 701, 801.

M.R.Evid. 701 provides:

If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue.

During the taped interrogation, the officer repeatedly questioned whether Mannion was telling the truth and gave differing versions of the facts and asked Mannion if each version was accurate. Mannion argues that the officer would not have been able to make such statements if he were testifying before a jury. As such, Mannion argues that the admission of the tape in which such statements exist violates M.R.Evid. 701. The statements of the officer on tape are not "testimony" that is being offered at trial. In addition, as discussed below, the statements of the officer were not offered for the truth of the matter asserted. Therefore, we find that M.R.Evid. 701 is not violated.

■■■ The trial court found that the statements of the officer on the taped interrogation were not offered for the truth of the matter asserted and therefore were not inadmissible hearsay. Instead, the court admitted the statements to show the context of the statements made by Mannion. In addition, the trial court instructed the jury that such statements were not being offered for their truth. Mannion asserts that the trial court erred in admitting the statements to show context. Since the tape-recorded statements are out-of-court statements, the hearsay rule is implicated. The statements of Mannion, however, because they are admissions against him as a party, are not hearsay and therefore are admissible pursuant to M.R.Evid. 801(d)(2)(A). The statements made by the officer to which Mannion "manifested his adoption or belief in [their] truth" are also admissible non-hearsay as admissions. M.R.Evid. 801(d)(2)(B). This appeal focuses on the statements of the officer which were not adopted by Mannion. Since these statements were admitted by the trial court not for the truth of the matter asserted but rather to provide context for the other statements made by Mannion, they do not violate the hearsay rule. See M.R.Evid. 801(c). As non-hearsay, these statements of the officer are admissible to prove context if they are relevant, M.R.Evid. 401, and not excludable on the grounds of prejudice, confusion or waste of time. M.R.Evid. 403. We find that the admission of the statements of the officer to show context, not to prove their truth, was within the court's discretion.

Mannion argues that the admission of such "contextual" statements is only available for statements made by co-defendants and is not available when the statements were made during an interrogation. Authority for such an assertion is lacking. See Lee v. McCaughtry, 892 F.2d 1318, 1324–26 (7th Cir.1990) (cited by U.S. v. McDowell, 918 F.2d 1004, 1007 (1st Cir.1990)); See generally, 58 A.L.R.3d 598; cf., State v. Rossignol, 580 A.2d 152, 154 (Me.1990); State v. Mottram, 184 A.2d 225, 232 (Me.1962)

■■■ Next, Mannion contends that the trial court erred in sending the taped interrogation, and its transcript, to the jury room. Mannion did not object to the trial court's ruling on this issue, so we review it for obvious error. M.R.Crim.P. 52; State v. True, 438 A.2d 460, 467 (Me.1981). In fact, the trial transcript indicates that Mannion supported the decision to give the tapes and transcript to the jury. We find that the trial court's action did not constitute obvious error. See Jonathan M. Purver, Annotation, Permitting Documents Or Tape Recordings Containing Confessions Of Guilt Or Incriminating Admissions To Be Taken Into Jury Room In Criminal Case, 37 A.L.R.3d 238 (1971 & Supp.1993).

## Sufficiency of the Evidence

■■■ In reviewing a sufficiency of the evidence challenge to a criminal conviction, we view the evidence in the light most favorable to the State to determine whether a jury rationally could find every element of the criminal charge beyond a reasonable doubt.

*E.g.*, *State v. Barry*, 495 A.2d 825, 826 (Me. 1985). Mannion was convicted of murder. 17–A M.R.S.A. § 201(1)(A).[3] He does not dispute that a death occurred or that his actions caused such death. However, he claims that the State produced insufficient evidence showing intentional or knowing conduct and that, instead, the evidence shows "accidental" conduct. After reviewing the trial transcripts in the light most favorable to the State, we determine that the jury rationally could have found that Mannion acted intentionally or knowingly in causing the death of Lewis.

The entry is:

Judgment affirmed.

All concurring.

---

3. 17–A M.R.S.A. § 201(1)(A) (1983) states: "A person is guilty of murder if ... [h]e intentionally or knowingly causes the death of another human being[.]"