MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2015 ME 167
Docket:       Cum-14-496
Argued:       November 5, 2015
Decided:      December 31, 2015

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, and HJELM, JJ.

## STATE OF MAINE

v.

## ANTHONY W. PRATT JR.

MEAD, J.

[¶1]   Anthony W. Pratt Jr. appeals from a judgment of conviction for murder, 17-A M.R.S. § 201(1)(A) (2014), entered by the trial court (Cumberland County, *Warren, J.*) following a jury trial.  Pratt contends that the court erred in admitting in evidence an audio recording of his interview with a police detective, and in admitting evidence that Pratt had assaulted the victim hours before she was killed.  We affirm the judgment.

## I.  BACKGROUND

[¶2]  The jury could have found the following facts, which we view in the light most favorable to the jury's verdict.  *See Reardon v. Larkin*, 2010 ME 86, ¶ 4, 3 A.3d 376.  At the end of the summer of 2012, the victim, Margarita Scott, was involved in a romantic relationship with Anthony Pratt Jr., who was also selling her drugs.  Margarita shared an apartment in Westbrook with her husband,

Cary Scott. Pratt lived in Portland with Christopher Jennings, Jennings's wife Tunile, and the couple's children. Margarita spent time at both locations. Eventually she agreed to marry Pratt and accepted an engagement ring from him. Pratt was unhappy, however, that Margarita continued to wear Cary's ring as well as his, and he was angry that she continued to spend time with Cary at the marital apartment.

[¶3] Margarita spent the night of November 9, 2012, at the apartment she shared with Cary. At about 10:30 a.m. the next day, after Cary had gone to work, Pratt, who was upset that Margarita had not stayed with him the previous evening, took a cab to the Scotts' Westbrook apartment. A neighbor who lived in the apartment directly below the Scotts saw Pratt arrive in a taxi and pound on Margarita's door; the neighbor said that when Margarita opened the door Pratt "either pushed her or grabbed her by the hair and [they] ended up going down the [whole flight of] stairs." The neighbor said that "the whole time that the beating was occurring," he heard Pratt saying that "[h]e believe[d] that she was fucking her husband." Pratt and Margarita ended up in the driveway, where the neighbor saw "[Pratt] proceeding to kick her, punch her and complain to her that she was fucking her husband." When the beating continued, the neighbor called the police. Pratt and Margarita went back upstairs to the apartment. The neighbor never saw Margarita again.

[¶4]  Cary returned to the apartment for lunch because Pratt had called him several times that morning to see if he wanted to buy drugs, and Cary suspected that Pratt actually wanted to know his whereabouts.  He arrived to find Margarita "disheveled" with a bruise under her right eye and marks on her face.  Shortly thereafter a Westbrook police officer came to the door.  Pratt was in the apartment, but Margarita had hidden him in a closet.  The officer testified to Margarita's "upset . . . crying" demeanor and to observing similar injuries.  When Cary returned to work he was still upset, so he left work and returned home unexpectedly.  Pratt was there and said that he had come to help Margarita after she had been assaulted.

[¶5]  Cary drove Pratt and Margarita to a store in Portland, where he was to wait for Margarita to get some clothes at the Jennings's apartment and then return.  When she did not come back after an hour or two, Cary left and went home.  Tunile Jennings testified that Pratt and Margarita returned to the apartment between 2:00 and 3:00 p.m., and that Pratt was wearing women's clothing and a wig, apparently as a disguise.  Margarita told Tunile that Pratt had dragged her down some stairs, punched her in the face, and choked her.  Tunile saw that Margarita's ear was swollen and her eye was very red; Margarita said that she was in a lot of pain, her ears were ringing, and that "her body was sore because he dragged her."

4

[¶6]  At 8:00 p.m. Margarita called Cary to say that she had taken their truck but would have it back by 2:00 a.m. for him to go to work.  She never did return the truck, and Cary never saw or spoke to her again.  That night, Margarita gave Christopher and Tunile a ride to the Old Port in her truck so that the couple could celebrate Christopher's birthday; Pratt stayed at the apartment to babysit the children.  At 1:00 a.m. on November 11, Tunile used a borrowed phone to call the apartment; she had left her own phone at the apartment with Pratt.  She spoke to Margarita to tell her that she did not have to pick them up as planned.  Between 1:30 and 2:00 a.m., Tunile called her phone again and this time spoke to Pratt.  When Tunile and Christopher returned home shortly after 3:00 a.m., Pratt was on the couch and Margarita was gone.  Neither Christopher nor Tunile saw Margarita again.

[¶7]  At about 6:00 a.m. that same day, Pratt woke Christopher to say that he needed to go home to New York to care for his grandfather.  He had not previously said anything about his grandfather having problems.  Pratt boarded a bus that afternoon and did not return.  Two months later, on January 17, 2013, a friend of Cary Scott found Cary's missing truck in a motel parking lot.  Cary discovered Margarita's body in the back seat.  The medical examiner testified that she died from a gunshot to the neck, and said that there was nothing inconsistent with a date of death of November 11, 2012.  The State presented incriminating forensic

evidence, including evidence from which the jury could conclude that Pratt once had possession of the gun that killed Margarita.

[¶8] Detective Richard Vogel of the Portland Police Department interviewed Pratt twice, once in Portland and later at a New York Police Department stationhouse. In the second interview, Vogel told Pratt several times that he thought Pratt was lying, and that his story would not "fly." At the conclusion of the second interview, Pratt was arrested and charged with Margarita Scott's murder.

[¶9] In May 2013 the Cumberland County Grand Jury returned an indictment charging Pratt with murder, 17-A M.R.S. § 201(1)(A). Pratt moved in limine to exclude evidence of the November 10, 2012, assault on Margarita in Westbrook. The State filed a related motion to allow evidence of the relationship between Pratt and Margarita. The court ruled that "the prior relationship . . . it's coming in to some degree."

[¶10] A ten-day trial ended on October 9, 2014, when the jury returned a verdict of guilty. At a sentencing hearing, the court sentenced Pratt to forty-two years' imprisonment and to pay $4,000 in restitution. Pratt appealed the resulting judgment and filed an application for leave to appeal from sentence, which the Sentence Review Panel denied.

## II.  DISCUSSION

### A.  The Recorded Interview

[¶11]  The court allowed the State to admit in evidence and play for the jury the recorded New York interview.  Pratt contends that the court should have excluded Vogel's questions and statements because their admission (1) violated M.R. Evid. 802 and 403, (2) allowed improper prosecutorial vouching, and (3) resulted in prejudice that was not cured by the court's limiting instruction.

### 1.  Rules 802 and 403

[¶12]  The court allowed the jury to hear Vogel's statements over Pratt's objection.  Pratt first argues that Vogel's statements constitute inadmissible hearsay pursuant to M.R. Evid. 802[1] because "[t]here is . . . no 'context' exception to the hearsay rule."  In *State v. Mannion*, we considered the same argument under the same circumstances presented here.  637 A.2d 452, 455-56 (Me. 1994).  We concluded that hearsay rules did not foreclose admission of statements made by an officer during a taped interrogation of the defendant because "the statements of the officer were not offered for the truth of the matter asserted."  *Id*. at 456. Accordingly, "the admission of the statements of the officer to show context, not to prove their truth, was within the court's discretion."  *Id*.

---

[1]  Maine Rule of Evidence 802 (Tower 2014) provided: "Hearsay is not admissible except as provided by law or by these rules."  The Restyled Maine Rules of Evidence did not take effect until January 1, 2015, after the trial had been completed.  2014 Me. Rules 15 (effective Jan. 1, 2015).

[¶13]  The court's decision to admit the recording pursuant to Rule 403[2] is likewise reviewed for an abuse of discretion.  *Steadman v. Pagels*, 2015 ME 122, ¶ 18, --- A.3d ---.  Although the recording was adverse to Pratt's cause, it was also probative concerning the central issue at trial—whether it was Pratt or someone else who murdered the victim.  From the interview, the jury could conclude that Pratt's responses to questions were inconsistent and that some of his actions were insufficiently explained; if it did so, the jury would logically consider the next question: why Pratt answered and behaved that way if he had not committed the crime.

[¶14]  Rule 403 does not provide for the exclusion of relevant evidence simply because it is adverse; rather, it operates to exclude relevant evidence when it is unfairly prejudicial because the prejudice resulting from its admission substantially outweighs its probative value.  M.R. Evid. 403.  The court did not err in determining that that was not the case here.

2.    Vouching

[¶15]  Pratt contends that because Vogel was the lead detective in the case, sat at the State's counsel table at trial, and was referred to by the prosecutor during his opening statement as one of the people responsible for proving the State's case,

---

[2]  The rule in effect at the time of trial provided: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  M.R. Evid. 403 (Tower 2014).

8

Vogel's assertion during the recorded interview that Pratt was lying was the equivalent of the prosecutor telling the jury at trial that Pratt was a liar. We have said that "it is improper for a prosecutor to express an opinion on the credibility of a defendant. This is particularly true because prosecutors are cloaked with the authority of the State, and [are] duty-bound to see that justice is done." *State v. Schmidt*, 2008 ME 151, ¶ 16, 957 A.2d 80 (alteration in original) (citation and quotation marks omitted).

[¶16] Pratt's argument, for which he cites no authority from any state or federal court, is not persuasive. A police officer heard on a recording telling a suspect that he believes the suspect is lying is fundamentally different from a prosecutor telling a jury that a witness lied. The use of a recorded police interview is not an expression of the prosecutor's personal opinion, and therefore does not constitute improper vouching by the State's attorney, because jurors know that the roles of a police officer and a prosecutor are not the same, and they are capable of discerning the difference between the two. *See State v. Lowe*, 2015 ME 124, ¶ 33, 124 A.3d 156 (stating that jurors are "charged with the responsibility of drawing on their common sense and life experiences").

3.      Limiting Instruction

[¶17]  Subject to his objection to Vogel's statements being played to the jury at all, Pratt agreed with a limiting instruction that the court gave before the jury heard the recorded interview.  The court instructed the jury that

> during the course of questioning Mr. Pratt, Detective Vogel and possibly Detective Rybeck make various statements about the facts as Detective Vogel understood them or as he stated he understood them. And his statements . . . are hearsay and cannot be considered by you as evidence of any of the factual assertions Detective Vogel made or as to any factual statements that are contained in Detective Vogel's questions.  However, Detective Vogel's statements and questions may be considered as part of the interview of Mr. Pratt.  The statements made by Mr. Pratt in that interview are evidence and you can consider Mr. Vogel's statements and questions to the extent that they give meaning to Mr. Pratt's statements and answers or to the extent they allow you to understand Mr. Pratt's answers.

[¶18]  Pratt now contends that the limiting instruction was insufficient. Because Pratt agreed with the instruction he now challenges, we review the instruction for obvious error.  *See State v. Whiting*, 538 A.2d 300, 302 (Me. 1988). We defer to a trial court's determination that an instruction will cure a potential problem, and "presume that the jury followed the court's instruction." *State v. Wyman*, 2015 ME 1, ¶ 24, 107 A.3d 641.  Here, where the language of the instruction correctly stated the law that the jury is presumed to have followed— "you can consider Mr. Vogel's statements and questions to the extent that they give meaning to Mr. Pratt's statements and answers or to the extent they allow you

to understand Mr. Pratt's answers," *see Mannion*, 637 A.2d at 456—the record reveals no error, much less obvious error.

## B.     Evidence of the Prior Assault

[¶19]  The jury heard evidence from which it could find that Pratt assaulted the victim approximately fifteen hours before she was killed.  Pratt moved in limine, pursuant to M.R. Evid. 404(b)[3] and 403, to exclude statements that the victim made about the assault, and to limit, but not exclude altogether, other evidence concerning the assault, saying,

> In this case, although evidence of the prior domestic violence is admissible insofar as it is relevant to motive or intent, the Court should carefully circumscribe the admission of such evidence. . . . [T]he Court should limit such evidence as much as possible.

[¶20]  Pratt reiterated that position at the motion hearing, and elaborated on it.  As to the victim's statements, he "concede[d] . . . that a few of these statements may be admissible as statements of existing . . . physical condition," specifically her statements "complaining of having a hard time hearing out of her right ear and of leg pain.  She also complained about her left ear . . . [and] that her right hand had been scratched already but that the discoloration was new."  As to evidence concerning the prior assault generally, Pratt told the court that

---

[3]  The rule in effect at the time of trial provided: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith."  M.R. Evid. 404(b) (Tower 2014).

[w]e do concede that some of that evidence is relevant to motive and intent but it needs to be carefully limited . . . . We would ask that there be a 404 limiting instruction before opening statements . . . . [and] also ask for a reiteration of that limiting instruction before any witness is going to talk about it.  And then, lastly, it should be included in the jury instructions.

[¶21]  Although the court expressed concern that an instruction prior to openings would be confusing because the jury would not know at that point what it was to disregard, Pratt twice agreed with the outline of the instruction that the court proposed to give at appropriate points.  He also agreed that "two neighbors and one cop" should be allowed to testify concerning the assault so long as the court did not allow them to "elaborate ad nauseam on this point."

[¶22]  Before the Westbrook police officer testified about her contact with the victim and her observations of the victim's injuries following the prior assault, Pratt accepted the court's offer of a limiting instruction.  The court told the jury:

Mr. Pratt is not charged in this case with assaulting Margarita Scott on November 10 and you may not assume or conclude, based on any evidence as to any conduct or physical altercation involving the defendant that may have occurred on the morning of November 10, as evidence that Mr. Pratt had any disposition or propensity to commit any acts or any violent acts or any conduct that would tend to show he committed the crime here or that necessarily means he committed the offense that is charged here and that you need to determine at the conclusion of all the evidence.  Evidence as to a physical altercation between Mr. Pratt and Margarita Scott on the morning of November 10 or of any conduct engaged in at that time may be considered by you only to the extent that that evidence may shed light on whether Mr. Pratt had any motive or intent to commit the crime that is charged in this case or to the extent that such evidence may

12

shed light on the state of Mr. Pratt's relationship with Margarita Scott at the time in question.

In its charge to the jury, the court gave a substantially similar instruction; Pratt did not object to it.

[¶23]  On appeal, Pratt contends that the court erred in admitting evidence concerning the prior assault—including the evidence that he agreed at trial was admissible—because admitting the evidence violated M.R. Evid. 403, and because the court's limiting instruction was not sufficient to satisfy Rule 404(b).  Although we generally "review the trial court's decision to admit [] evidence pursuant to Rule 404(b) for clear error and its determination pursuant to Rule 403 for an abuse of discretion," *Steadman*, 2015 ME 122, ¶ 18, --- A.3d --- (quotation marks omitted), here our review is for obvious error because Pratt did not object to evidence of the prior assault being admitted for a proper purpose, and did not object to the limiting instruction that the trial court gave to prevent potential prejudice.  *See State v. Millay*, 2001 ME 177, ¶ 12, 787 A.2d 129.

1.     Rule 404(b)

[¶24]  The rule in effect at the time of the trial provided: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith."  M.R. Evid. 404(b) (Tower 2014).  As we have said, evidence of prior bad acts is admissible for

limited purposes other than to prove propensity, in that "Rule 404(b) does not render inadmissible evidence of other crimes, wrongs, or acts if the evidence is offered to demonstrate motive, intent, identity, absence of mistake, or the relationship of the parties." *State v. Barnes*, 2004 ME 38, ¶ 5, 845 A.2d 575.

[¶25]  Here, the parties agreed that the only real issue for the jury was the identity of Margarita Scott's killer.  Evidence that an angry Pratt committed a serious assault against a woman whom he described as his fiancée hours before she was killed was relevant, and therefore admissible, concerning each of the proper purposes identified in *Barnes*: motive, intent, identity, absence of mistake, and the relationship of the parties.[4]  *See id.*

2.    Rule 403

[¶26]  Contrary to Pratt's contention that "[t]he probative value of the alleged assault was low to nil," the State's theory of the case was that Pratt killed Margarita because he thought she was "cheating on him" with her husband.  The probative value of evidence from which the jury could conclude that Pratt was angry enough with Margarita to purposefully and violently assault her hours before her death is obvious.  As with the recording of Pratt's police interview, evidence of

---

[4]  Contrary to Pratt's assertion that the state of the relationship evidence was "simply floating freely without any nexus to anything at all," evidence concerning the tumultuous state of Pratt and Margarita's relationship on the day before her murder had a clear nexus to the ultimate issue—whether Pratt had the motive and intent to kill her, and did so.  *See* Field & Murray, *Maine Evidence* § 404.7 at 150 (6th ed. 2007) (stating that "the court should carefully consider . . . the extent to which proof of the [parties'] relationship supports inferences relevant to the basic issues in the case").

the close-in-time assault was doubtlessly prejudicial to Pratt's cause, but it was not *unfairly* prejudicial and it was also highly probative concerning the central issue at trial—whether it was Pratt or someone else who murdered Margarita Scott.

3.      Limiting Instruction

[¶27]   The danger of unfair prejudice that must be weighed against the probative value of relevant evidence was, in this case, mitigated by the court's careful, twice-repeated limiting instruction. We presume that the jury followed the trial court's instruction, which limited its consideration of the prior assault evidence to a proper purpose under Rule 404(b): "whether Mr. Pratt had any motive or intent to commit the crime that is charged in this case or [] the extent [to which] such evidence may shed light on the state of Mr. Pratt's relationship with Margarita Scott at the time in question." *See Wyman*, 2015 ME 1, ¶ 24, 107 A.3d 641. The record thus reveals no error.

C.    Due Process

[¶28]   Pratt finally contends that the court's admission of his recorded interrogation by Vogel, and of evidence that he assaulted the victim before she was murdered, either individually or collectively violated his constitutional right to due process. Pratt is, like any person charged with a crime, guaranteed a fair trial by the Due Process Clause of the Fourteenth Amendment. *See State v. Shulikov*, 1998 ME 111, ¶ 10, 712 A.2d 504. "We review [Pratt's] constitutional arguments

for obvious error because he first raised them on appeal." *State v. Nichols*, 2013 ME 71, ¶ 23, 72 A.3d 503. Because the court did not err in admitting the challenged evidence, there was no violation of Pratt's due process rights.

The entry is:

> Judgment affirmed.

---

**On the briefs:**

Jamesa J. Drake, Esq., Drake Law, LLC, Auburn, for appellant Anthony W. Pratt Jr.

Janet T. Mills, Attorney General, and Donald W. Macomber, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee State of Maine

**At oral argument:**

Jamesa J. Drake, Esq., for appellant Anthony W. Pratt Jr.

Donald W. Macomber, Asst. Atty. Gen., for appellee State of Maine

Cumberland County Unified Criminal Docket docket number CR-2013-2065
FOR CLERK REFERENCE ONLY