MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2017 ME 92
Docket:      Ken-16-350
Argued:      April 13, 2017
Decided:     May 11, 2017

Panel:       SAUFLEY C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

STATE OF MAINE

v.

JUSTIN G. PILLSBURY

ALEXANDER, J.

[¶1] Justin G. Pillsbury appeals from a judgment of conviction for one count of intentional or knowing or depraved indifference murder, 17-A M.R.S. § 201(1)(A) and (B) (2016), entered by the trial court (Kennebec County, *Murphy, J.*) following a four-day jury trial. On appeal, Pillsbury argues that the trial court abused its discretion in denying his motion for a new trial. Specifically, he argues that the trial court clearly erred when it found (1) no prosecutorial misconduct and (2) that evidence of prior bad acts was properly admitted. We affirm the judgment.

I. CASE HISTORY

[¶2] Viewing the evidence in the light most favorable to the State, the jury could rationally have found the following facts beyond a reasonable

2

doubt.[1]  *See State v. Morrison*, 2016 ME 47, ¶ 2, 135 A.3d 343.  The forty-one-year-old defendant, Justin G. Pillsbury, and the twenty-four-year-old victim were dating in the fall of 2013, and had been dating on and off for over two years.  In November 2013, Pillsbury was living with a friend in an apartment on Crosby Street in Augusta.

[¶3]  On the evening of November 13, 2013, Pillsbury and the victim were drinking in the Crosby Street apartment.  While the two were alone, the victim was texting on her phone, and Pillsbury became jealous and began asking to see the phone.  The victim refused to turn over her phone, and Pillsbury, who was a foot taller and 100 pounds heavier, physically took it from her.  The phone had a pattern lock on it, and Pillsbury was unable to unlock the phone, which angered him.

[¶4]  In a recorded interview with police detectives following the homicide, Pillsbury stated that the victim grabbed a knife from a butcher's block on the kitchen counter, pointed it at Pillsbury, and demanded her phone back.[2]  Pillsbury stated that he attempted to take the knife from the victim and cut his finger in the process.  He was ultimately successful in taking the knife

[1] Pillsbury does not challenge the sufficiency of the evidence, and the evidence does support the jury's finding of guilt as to the charge of murder.  *See* 17-A M.R.S. § 201(1)(A) and (B) (2016).

[2] In that recorded interview, Pillsbury stated that the victim grabbed the knife "jokingly" and also stated that he never thought that she would actually use the knife against him.

from the victim and began stabbing her with it. The victim retreated into the bathroom. Pillsbury followed her into the bathroom where he continued to stab the her in the neck and back.

[¶5] Realizing what he had done, Pillsbury then took another knife from the butcher block and began stabbing himself in the neck and slashing at his arms. Pillsbury's friend—with whom he had been staying—returned home at some point between 7:30 and 7:45 p.m. and noticed blood on the floor of his apartment. When he asked Pillsbury what happened, Pillsbury stated that the victim was talking to another man on her phone, he blacked out and killed her, and now he was trying to kill himself. The friend went to a neighbor's apartment where the friend and the neighbor each called the police.

[¶6] Paramedics arrived and transported Pillsbury to an Augusta hospital. During transport, Pillsbury requested that the paramedics let him die because he had killed his girlfriend and was trying to kill himself. An autopsy of the victim revealed twelve stab wounds to her back, head, eye, hand, and neck. These stab wounds were determined to have caused the victim's death.

4

[¶7]   Two days after Pillsbury was taken to the hospital, he was interviewed by detectives from the Maine State Police.[3]  The detectives read Pillsbury the *Miranda* warnings, and he agreed to answer questions.  During his discussion with police, Pillsbury admitted that he stabbed the victim to death because of his insecurities, that he had caused all of the injuries to the victim, and that he was not acting in self-defense.  Following the interview, Pillsbury was arrested for murder.

[¶8]  A Kennebec County grand jury returned an indictment charging Pillsbury with knowing or intentional or depraved indifference murder pursuant to 17-A M.R.S. § 201(1)(A) and (B) (2016), on January 24, 2014.  A four-day jury trial was held on March 14-17, 2016.

[¶9]   During the State's opening statement, the prosecutor remarked, "Why did Justin Pillsbury stab [the victim] to death?  Because he was jealous. Jealousy has been described as a green-eyed monster.  Well, ladies and gentlemen, on November 13, 2013, that green-eyed monster was uncaged at [the] apartment [on] Crosby Street here in Augusta."  Pillsbury did not object.

[¶10]  Following the State's opening statement, at sidebar, Pillsbury did raise a concern with the prosecutor's reference to his arrest following the

[3]  Detectives had attempted to interview Pillsbury the previous day; but, after the *Miranda* warnings were read, he had informed detectives that he was not feeling up to talking at that time.

interview with detectives, and he requested a limiting instruction that an arrest "means nothing, or words to that effect."  The court told the parties that the final instructions would address the presumption of innocence.  The court then, sua sponte, stated to the prosecutor, "I do want to talk to you before we do closing about whether or not you're going to refer to the defendant as a monster."  Pillsbury did not request any further relief, and no instructions were given at that time.

[¶11]  During his opening statement, Pillsbury asserted that "he did not murder [the victim] because he acted in self-defense."  He went on to assert that the evidence would show that the victim stabbed him in the throat, the finger, and above the eye, and that he grabbed a knife out of the sink and stabbed the victim in self-defense.

[¶12]  The following morning, Pillsbury moved for a mistrial, arguing that because "this is a mixed race sort of case, [and] there have been a number of recent racial headlines unrelated to this case," the prosecutor's reference to a green-eyed monster contained problematic racial overtones.  The prosecutor responded that "green-eyed monster" was a well-known reference to jealousy, and was a "Shakespearian thing" having nothing to do with race.

6

The court denied the motion for a mistrial but instructed the prosecutor not to refer to Pillsbury as a monster during closing.

[¶13]  During its case-in-chief, the State called an acquaintance of the victim and of Pillsbury, who testified to an incident where she observed Pillsbury—due to jealousy—physically assault the victim.  Pillsbury objected, arguing that the testimony contained evidence of prior bad acts prohibited by M.R. Evid. 404(b), and further argued that any probative value was substantially outweighed by the danger of unfair prejudice under M.R. Evid. 403.  Following a voir dire of the witness, the court concluded that the testimony was relevant to Pillsbury's motive and intent, and to the relationship of the parties, and was not unfairly prejudicial.

[¶14]  Pillsbury testified in his own defense.  During his testimony he stated that the victim became violent when she was drunk, that she was drunk on the night of November 13, 2013, and that he acted in self-defense after she had stabbed him with the knife.  He also stated that he did not intend to kill the victim, but only wanted to "neutralize the threat."

[¶15]  The jury returned a verdict of guilty on the charge of intentional or knowing or depraved indifference murder.[4]  Pillsbury moved for a new

---

[4]  Pillsbury was sentenced to fifty years' incarceration and ordered to pay $3,900 to the Victim's Compensation Fund.

trial, M.R.U. Crim. P. 33, arguing that he was deprived of a fair trial and was unfairly prejudiced by the prosecutor's "uncaged" "green-eyed monster" comment, and that the testimony about his prior bad acts was barred by M.R. Evid. 403 and 404(b). A hearing on the motion was held on May 10, 2016. After the hearing, the court orally denied the motion. Pillsbury then brought this appeal. *See* 15 M.R.S. § 2115 (2016); M.R. App. P 2(a)(1), (b)(2)(A).

## II. LEGAL ANALYSIS

[¶16] On appeal, Pillsbury argues that the trial court abused its discretion in denying his motion for a new trial. Specifically, he argues that the trial court erred when it found (1) no prosecutorial misconduct, and (2) that the evidence of prior bad acts was admissible.

[¶17] We review the factual findings underlying the denial of a motion for a new trial for clear error, and the overall decision for an abuse of discretion. *See State v. Carey*, 2013 ME 83, ¶ 26, 77 A.3d 471. We will vacate a conviction only when the defendant was deprived of a fair trial. *Id.*

A.     Prosecutor's Statements

[¶18] We review a preserved claim of prosecutorial misconduct for harmless error. *See State v. Dolloff*, 2012 ME 130, ¶¶ 31-34, 58 A.3d 1032.

8

"Any error, defect, irregularity, or variance that does not affect substantial rights shall be disregarded."  M.R.U. Crim. P. 52(a).  "When an objection has been made to a prosecutor's statements at trial, we review to determine whether there was actual misconduct, and, if so, whether the trial court's response remedied any prejudice resulting from the misconduct."  *Dolloff*, 2012 ME 130, ¶ 32, 58 A.3d 1032 (citations omitted).  "Harmful error is error that affects the criminal defendant's substantial rights, meaning that the error was sufficiently prejudicial to have affected the outcome of the proceeding."  *Id.* ¶ 33 (citations omitted).

[¶19]   Here, Pillsbury did not initially express concern about the "monster" references in the prosecutor's opening statement; it was the trial court, sua sponte, that raised the issue.  Although the court expressed concern about that portion of the prosecutor's statement, the court addressed that concern appropriately.  The court instructed the State not to refer to Pillsbury as a monster during closing.  The court also specifically stated to the jury— both before opening statements and as part of its final instructions—that the opening and closing statements by the parties are not evidence from which the jury can find facts.  The court further instructed that the jury should find facts free from "any passion, any prejudice, any sympathy or any bias

whatsoever." "Juries are presumed to have followed jury instructions . . . ." *Dolloff*, 2012 ME 130, ¶ 55, 58 A.3d 1032. Pillsbury has cited nothing in the record to indicate that the jury was unable to follow those instructions.

[¶20] As the trial court found, the prosecutor said nothing that constituted prosecutorial misconduct. Although the court also stated, "I think [the comment about the uncaged monster] was right on the line of a statement that could have resulted in inflaming the jury or prejudicing the jury," Pillsbury was not deprived of a fair trial.

[¶21] A prosecutor may use "wit, satire, invective and imaginative illustration in arguing the State's case," and may present an analysis of the evidence in opening or closing statements "with vigor and zeal" as long as those statements do not invite the jury to make its decision based on something other than the evidence. *See Dolloff*, 2012 ME 130, ¶ 41, 58 A.3d 1032 (quoting *State v. Weisbrode,* 653 A.2d 411, 416 (Me. 1995)). No such invitation was made here, and the interests of justice do not require us to vacate Pillsbury's conviction, especially given the substantial evidence against him that was presented to the jury.[5]

---

[5] As discussed previously, this evidence included Pillsbury's confession to the murder made to both responding paramedics and the friend he was staying with at the Crosby Street apartment. It also included the recorded interview with detectives in which Pillsbury admitted that he stabbed

10

## B. Evidence of Prior Bad Acts

[¶22]  We review a trial court's decision to admit evidence of prior bad acts pursuant to M.R. Evid. 404(b) for clear error, and its determination pursuant to M.R. Evid. 403 for an abuse of discretion.  *Steadman v. Pagels*, 2015 ME 122, ¶ 18, 125 A.3d 713; *State v. Hassan*, 2013 ME 98, ¶ 29, 82 A.3d 86.  Rule 404(b) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." M.R. Evid. 404(b).  The rule, however, permits "the admission of evidence of prior bad acts for any other permissible purpose, such as motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."  *Steadman*, 2015 ME 122, ¶ 17, 125 A.3d 713.  Though otherwise admissible, a court may exclude evidence where "its probative value is substantially outweighed by a danger of . . . unfair prejudice . . . ." M.R. Evid. 403.

[¶23]  Here, the testimony regarding Pillsbury's prior assault of the victim as a result of his jealousy was admissible because it went to his motive and intent, and to the relationship between Pillsbury and the victim.  The

the victim to death because of his insecurities, that he had caused all of the injuries to the victim, and that he was not acting in self-defense.

State's theory was that jealousy was prevalent in the relationship between the victim and Pillsbury, and that it was jealousy that caused Pillsbury to murder the victim. The witness's testimony supported that theory and was informative about the relationship because the witness observed Pillsbury— due to jealousy—shove the victim and accuse the victim of cheating on him.[6] *See State v. Pratt*, 2015 ME 167, ¶ 25, 130 A.3d 381 (observing that evidence of a prior incident where the victim was physically abused by the defendant was admissible to show "motive, intent, identity. . . and the relationship of the parties").

[¶24] Rule 403 does not bar the admission of adverse or prejudicial evidence. The court may exclude evidence if the probative value is

---

[6] The admission of the evidence was also proper given Pillsbury's statements pertaining to self-defense made during his opening. We have observed that statements made during a party's opening can place an issue before the jury. *See State v. Lockhart*, 2003 ME 108, ¶ 49, 830 A.2d 433 (observing that a reference in the prosecutor's opening statement addressing the defendant's theory of the case was proper because the defendant's theory of the case was before the jury). Because Pillsbury stated in his opening that he acted in self-defense, which was contrary to statements he had previously made to paramedics and detectives, evidence of a prior incident where he became jealous and physically accosted the victim was proper. *See State v. Gorman*, 2004 ME 90, ¶ 41, 854 A.2d 1164 (observing that a trial court action, proper under the law, may be affirmed, even for a different reason than that given by the trial court).

The facts of this case are distinguishable from the facts of *State v. Donovan*, 1997 ME 181, 698 A.2d 1045, in which we held that a defendant's statement during opening—that the victim had voluntarily returned to the defendant's house, thus demonstrating the pretextual nature of her accusations—did not "open the door" for the State to present evidence of the victim's prior marital history and abusive relationships because those relationships were never placed in issue. *Id.* ¶¶ 6-9. Here, Pillsbury's opening statement focused squarely on how the evidence would show that he acted in self-defense and had not murdered the victim, thus placing the issue of self-defense before the jury. Because the issue of self-defense was before the jury, the admission of the witness's testimony regarding Pillsbury's prior attack on the victim stemming from jealousy was proper.

12

substantially outweighed by a danger of unfair prejudice.[7]  Here, as the trial court explicitly found, the evidence was adverse to Pillsbury, but there was no "unfair prejudice" resulting from its admission.  Because the trial court did not clearly err or abuse its discretion in admitting the evidence of Pillsbury's prior assault of the victim, we affirm the conviction.

The entry is:

Judgment affirmed.

Stephen C. Smith, Esq., and Caleb J. Gannon, Esq. (orally), Lipman & Katz, PA, Augusta, for appellant Justin Pillsbury

Janet T. Mills, Attorney General, and Donald W. Macomber, Asst. Atty. Gen. (orally), Office of the Attorney General, Augusta, for appellee State of Maine

Kennebec County Superior Court docket number CR-2013-1074
FOR CLERK REFERENCE ONLY

---

[7]  The seminal treatise on evidence has succinctly observed that "prejudice, in this context, means more than simply damage to the opponent's cause.  A party's case is always damaged by evidence that the facts are contrary to his contentions; but that cannot be ground for exclusion. What is meant here is an unfair tendency to move the tribunal to decide on an improper basis, commonly, though not always, an emotional one."  McCormick, *Handbook on the Law of Evidence* 439 n.31 (2d ed. 1972) (quoted in *State v. Hurd*, 360 A.2d 525, 527 n.5 (Me. 1976)).