**STATE of Maine**

v.

**Ronald TIBBETTS.**

Supreme Judicial Court of Maine.

Submitted on briefs Jan. 22, 1992.
Decided Feb. 19, 1992.

David W. Crook, Dist. Atty., William Baghdoyan, Andrew Benson, Asst. Dist. Attys., Skowhegan, for the State.

David M. Sanders, Livermore Falls, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD, and COLLINS, JJ.

GLASSMAN, Justice.

Ronald Tibbetts appeals from the judgment entered in the Superior Court (Somerset County, *Beaulieu, J.*) on a jury verdict finding him guilty of operating a motor vehicle while under the influence of intoxicating liquor (OUI) or while having 0.08% or more by weight of alcohol in his blood (EBA), 29 M.R.S.A. § 1312–B (Pamph. 1991). Tibbetts contends that the State's expert was not qualified, that his proffered opinion testimony was irrelevant and that the testimony was improperly admitted in violation of M.R.Crim.P. 16(b). He further contends that the evidence was insufficient to support his conviction. We find no error in the record and affirm the judgment.

## I.

Near dusk on July 21, 1989, Tibbetts crashed his Chevy Blazer into a guardrail on Rt. 27 near Kingfield. A state trooper arrived at the scene one and a half to two hours after the accident. There was conflicting evidence as to whether Tibbetts had consumed any alcohol between the time of the accident and the arrival of the trooper. The trooper testified that Tibbetts admitted having drunk a six pack of beer prior to the accident, but had denied the consumption of any alcohol after the accident. Tibbetts testified that he had drunk four beers prior to the accident and had consumed one beer and two mixed drinks between the time of the accident and the time of the arrival of the trooper at the scene. His testimony concerning the mixed drinks was corroborated by another witness. A breath test administered approximately two hours after the accident revealed that at that time Tibbetts had a blood-alcohol concentration of 0.18%.

Applying the Widmark formula for absorption, dilution, and elimination of alcohol by the human body, the State's expert witness, over the objection of Tibbetts, offered the opinion that Tibbetts's blood-alcohol concentration was between 0.14% and 0.16% at the time of the accident. The expert factored estimated values into the computation to account for Tibbetts's

weight and the alcohol he allegedly consumed before and after the accident. The jury found Tibbetts guilty, and he appeals.

## II.

Tibbetts does not challenge the validity of the Widmark formula. Rather, he contends that the expert's testimony is not relevant because some of the expert's underlying assumptions were based on averages and estimates instead of accurate data particular to Tibbetts and that the State's expert witness was not qualified to offer the proffered opinion as to Tibbetts's blood-alcohol concentration at the time of the accident. The trial "court has scope of considerable breadth in deciding whether to admit opinion testimony of a defendant's blood-alcohol level, and its decision will be disturbed on appeal only on a clear showing of abuse of discretion." *State v. Richford*, 519 A.2d 193, 195 (Me.1986); *State v. Franklin*, 463 A.2d 749, 754-55 (Me.1983); Field & Murray, *Maine Evidence* § 702.1 at 262 (1987) (hereinafter Field & Murray at __).

A determination of admissibility encompasses two considerations: whether "the proffered opinion address[es] an issue of consequence in the case in a way that is helpful to the jury in making its determination" and "whether the proffered witness is properly qualified to give the opinion sought." Field & Murray at 263-64. The first consideration is one of relevance and turns upon "whether the matter is beyond common knowledge so that an untrained layman will not be able to determine it intelligently and whether a person with specialized knowledge can give a helpful opinion." Field & Murray at 263.

 Here, Tibbetts's blood-alcohol content at the time of the accident was the central question before the jury, and the significance of a 0.18% test result obtained approximately two hours after the accident was an issue of consequence in the case. The trial court properly determined that

the effects of alcohol absorption, dilution, and elimination on blood-alcohol concentrations over a period of time is beyond the common knowledge of a layperson and that the opinion of an expert with special knowledge in this area could be helpful to the jury's determination. An expert's opinion is not required to be stated with any special degree of certainty; lack of certainty by the expert witness affects the weight accorded the testimony, not its admissibility. *State v. Longley*, 483 A.2d 725, 731 (Me. 1984); *State v. Hebert*, 480 A.2d 742, 749 (Me.1984); Field & Murray at 264. By his cross-examination, Tibbetts had an opportunity to challenge any factor considered by the expert, both in the application of the Widmark formula and in the determination of Tibbetts's blood-alcohol content at the time of the accident.

 The second consideration involves the qualifications of the witness. *See* Field & Murray at 264. The expertise necessary to qualify as an expert may be gained by practical experience. *Id.* at 264-65; *see, e.g., State v. Carvelle*, 290 A.2d 190 (Me. 1972) (employment for ten years in the state's chemical laboratory qualified a witness without formal credentials as a chemist to give expert testimony regarding the presence of cannabis). Expertise acquired by training and experience in the use of a standardized chemical procedure may qualify the witness to testify as an expert concerning results obtained by application of the procedure in the absence of evidence that the procedure was invalid. *Carvelle*, 290 A.2d at 192. Here, the State's licensed chemist had twelve years' experience in the use of the Widmark formula. Tibbetts offered no evidence that the formula was invalid. Accordingly, the trial court properly determined that the expert's testimony was relevant, that it was admissible, and that it was for the jury to determine what weight, if any, to accord to it. The court also properly determined that the witness was properly qualified to give the opinion sought.

## III.

■ Tibbetts next contends that the State violated M.R.Crim.P. 16(b)[1] by failing to advise him that its listed expert would offer an opinion concerning Tibbetts's blood-alcohol content at the time of the accident. The decision whether to impose a sanction on the State for failure to comply with Rule 16(b) is a matter for the trial court and will not be overturned absent a clear showing of an abuse of discretion. *State v. Cook*, 581 A.2d 415, 417 (Me.1990). "To establish an abuse of discretion, [Tibbetts] must show that he was, in fact, prejudiced by [a] Rule 16(b) violation and that the prejudice rose to the level of depriving him of a fair trial," *id.*, despite the court's effort to nullify or minimize its consequences. *State v. Reeves*, 499 A.2d 130, 133 (Me.1985).

■ The State's expert was presented in response to Tibbetts's request, pursuant to 29 M.R.S.A. § 1312(8), that a chemist testify concerning the result of the breath test administered to Tibbetts approximately two hours after the accident.[2] On cross-examination, Tibbetts challenged the relevance of the test result as being too stale. The State then proffered the expert's opinion regarding Tibbetts's blood-alcohol concentration at the time of the accident, based on the Widmark formula. By a voir dire examination out of the presence of the jury, the court provided Tibbetts with an opportunity to explore the expert's qualifications and proffered testimony. After the voir dire examination, Tibbetts reasserted his objections to the relevance of the proffered testimony and the expert's qualifications. He did not request a continuance of the trial or the imposition of any sanctions for the claimed discovery violation. Nor did he suggest to the court that he would have obtained an expert of his own had he known in advance that the State would proffer the expert's opinion concerning Tibbetts's blood-alcohol content at the time of the accident. Even were we to assume that the State had violated M.R.Crim.P. 16(b), on this record we find no abuse of the court's discretion.

## IV.

■ Tibbetts also challenges the sufficiency of the evidence to support his conviction. The jury had before it Tibbetts's admission that he was operating his vehicle at the time of the accident and the test result that revealed his blood-alcohol content to be 0.18% approximately two hours after the accident. The jury also heard the expert's opinion testimony regarding Tibbetts's blood-alcohol concentration at the time of the accident. Although the jury heard conflicting testimony regarding the amount of alcohol Tibbetts had consumed before the accident and how much, if any, he had consumed in the interval of time between the accident and the arrival of the state trooper, "the jury has the responsibility to determine the credibility of the witnesses and the weight to be given their testimony." *State v. Flaherty*, 394 A.2d 1176, 1177 (Me.1978). Based on the evidence before it, the jury rationally could find beyond a reasonable doubt all the elements of the offense with which Tibbetts was charged. *State v. Barry*, 495 A.2d 825, 826 (Me.1985); 29 M.R.S.A. § 1312–B (Pamph.1991).

---

1. The rule states in relevant part:

 (1) *Duty of the Attorney for the State.* Upon the defendant's written request, the attorney for the state, except as provided in subdivision (3), shall allow access at any reasonable time to those matters specified in subdivision (2) which are within the attorney for the state's possession or control....

 (2) *Scope of Discovery.* The following matters are discoverable:

 ....

 (B) Any reports or statements of experts, made in connection with the particular case, including results of physical or mental examinations and of scientific tests, experiments, or comparisons;

M.R.Crim.P. 16(b).

2. The statute provides in relevant part:

 A person certified ... as qualified ... may issue a certificate stating the results of the analysis. That certificate ... shall be prima facie evidence that the percentage by weight of alcohol in the blood of the defendant was, at the time the breath sample was taken, as stated in the certificate, unless, with 10 days' written notice to the prosecution, the defendant requests that the operator or other qualified witness testify as to the results of the analysis.

 29 M.R.S.A. § 1312(8) (Pamph.1991).

The entry is:

Judgment affirmed.

All concurring.