MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:      2016 ME 61
Docket:        Aro-15-189
Argued:        February 11, 2016
Decided:       April 21, 2016

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and
               HUMPHREY, JJ.

STATE OF MAINE

v.

CARTER McBREAIRTY

SAUFLEY, C.J.

[¶1]  Carter McBreairty appeals from a judgment of conviction entered by the Superior Court (Aroostook County, *Hunter, J.*) after a jury found him guilty of thirteen hunting, fishing, and firearm-related offenses.  McBreairty argues that (A) there was insufficient evidence to support a conviction on five of the thirteen counts; (B) the court abused its discretion in denying his motion to dismiss two of the charges based on an accord and satisfaction that was offered to the court; (C) he was prejudiced when he was not provided physical access to fish in the State's possession prior to trial; and (D) the State's misstatement of fact during its closing argument prejudiced him, and the court failed to remedy that prejudice with a requested curative instruction.  We affirm the judgment.

## I.  BACKGROUND

[¶2]   Viewed in the light most favorable to the jury's verdict, the jury rationally could have found the following facts, which are supported by competent evidence, beyond a reasonable doubt.  *See State v. Jones*, 2012 ME 88, ¶ 7, 46 A.3d 1125.

[¶3]  In June 2012, a game warden investigator went to the Allagash as part of an undercover investigation designed to make contact with nine individuals suspected of committing hunting and fishing violations, including Carter McBreairty.  Over the next year and a half, the warden, acting under a pseudonym, spent time in the community.  He befriended the individuals who were under investigation and was included in various fishing and hunting expeditions.  During this time, he covertly monitored and documented McBreairty's hunting and fishing activities.

[¶4]  On April 2, 2014, the State filed a seventeen-count criminal complaint against McBreairty in the District Court (Fort Kent).  McBreairty pleaded guilty to Count 1, failure to register deer (exceeding 18 hours) (Class E), 12 M.R.S. § 12303-A(1)(B) (2015), and not guilty to all other charges.  He filed a request for discovery from the State, which included a request for any physical evidence "material to the preparation of the defense."   On April 18, 2014, McBreairty

requested a jury trial on the charges.[1] A four-day jury trial was held in the Superior Court (Aroostook County) on the remaining sixteen charges from September 15 to 18, 2014. Inclusive of Count 1, to which McBreairty pleaded guilty, the seventeen counts were as follows:

1.  Failure to register deer (exceeding 18 hours) (Class E), 12 M.R.S. § 12303-A(1)(B);
2.  Hunting deer after having killed one (Class D), 12 M.R.S. § 11501(2) (2015);
3.  Exceeding bag limit on deer (Class D), 12 M.R.S. § 11501(1) (2015);
4.  Possession of unregistered deer (Class E), 12 M.R.S. § 12306(1)(B) (2015);
5.  Hunting deer after having killed one (Class D), 12 M.R.S. § 11501(2);
6.  Night hunting (Class D), 12 M.R.S. § 11206(1)(A) (2015);
7.  Hunting deer after having killed one (Class D), 12 M.R.S. § 11501(2);
8.  Criminal trespass (Class E), 17-A M.R.S. § 402(1)(C) (2015);
9.  Fishing violation of number, amount, weight or size limits (Class E), 12 M.R.S. § 12602(2) (2015);
10. Theft of services (Class E), 17-A M.R.S. § 357(1)(A) (2015);
11. Hunting under the influence (Class D), 12 M.R.S. § 10701(1-A)(A)(2) (2015);
12. Theft of services (Class E), 17-A M.R.S. § 357(1)(A);
13. Loaded firearm in a motor vehicle (Class E), 12 M.R.S. § 11212(1)(B) (2015);[2]
14. Loaded firearm in a motor vehicle (Class E), 12 M.R.S. § 11212(1)(B);
15. Hunting under the influence (Class D), 12 M.R.S. § 10701(1-A)(A)(2);
16. Loaded firearm in motor vehicle (Class E), 12 M.R.S. § 11212(1)(B);
17. Hunting under the influence (Class D), 12 M.R.S. § 10701(1-A)(A)(2).

---

[1] The charges were filed before the implementation of the Unified Criminal Docket in Aroostook County eliminated the requirement of a jury trial request form.

[2] This provision was modified in 2015 to allow individuals with a permit to carry a concealed weapon to possess the loaded weapon specified in the permit in a motor vehicle. The modification does not affect this appeal.

4

[¶5]  On September 15, 2014, before the commencement of trial, McBreairty offered an accord and satisfaction to the court in support of his request that two counts be dismissed.  The accord and satisfaction was signed by the executive director of North Maine Woods and purported to release McBreairty from liability related to Counts 10 and 12 (theft of services, based on allegations that McBreairty was involved in entering on private property without fully paying a required fee).  The court deferred action on the request and took the accord and satisfaction under advisement pending the jury's verdict.

[¶6]  The State's case-in-chief consisted of the testimony of the warden as well as several exhibits entered in evidence through the warden, including a photograph of the fish allegedly caught by McBreairty in violation of fishing regulations.

[¶7]  McBreairty called a total of eleven witnesses.  Seven of McBreairty's eleven witnesses primarily testified regarding the warden's alleged alcohol use while he spent time with McBreairty or others.  The State impeached the testimony of one witness, a friend of McBreairty's, in the following colloquy:

Q: [Y]ou're not the type of person that's going to lie to protect a friend or relative, are you?

A: No.

Q: And you're not the type of person that's going to lie to the police, are you?

A: No.

Q: And you're not gonna lie to a jury, are you?

A: No.

Q: But you are in fact [the person] who was convicted in 2012 for unsworn falsification for lying to a police officer?

A: Yes.

McBreairty did not object, and no further facts regarding the 2012 conviction were identified.

[¶8]  Before closing arguments, the court instructed the jury that closing arguments are not evidence and reminded the jurors to be "governed by their own recollection of the evidence."  During the State's closing argument, the State referred to the witness's testimony, stating:

> [The witness] got on the stand and told you about those strong Jello shots.  By the way, that she had seven but didn't feel affected[].  And she told you that she wouldn't lie to protect a friend.  She wouldn't lie to the police to protect a friend and she wouldn't lie to you.  But it came out [she] was convicted basically of lying in the past trying to protect a friend.

McBreairty objected and asked for a curative instruction because the detail of lying "to protect a friend" was not in evidence.  The court agreed that it was inappropriate for the State to talk about the circumstances of the prior conviction, but it denied a curative instruction, stating, "There is no effective way . . . to go

6

back through the argument and parse out what is to be disregarded and what is not."

[¶9]   On September 18, 2014, the jury found McBreairty not guilty of Counts 3 (exceeding bag limit on deer), 4 (possession of unregistered deer), and 8 (criminal trespass).  The jury found McBreairty guilty of the thirteen remaining counts.

[¶10]  On February 24, 2015, the court held a sentencing hearing.  At the hearing, the court considered the accord and satisfaction that had been offered purporting to release McBreairty from liability for Counts 10 and 12 (theft of services).  The parties disputed the validity of the accord and satisfaction and the facts surrounding its procurement.  Specifically, the State presented a letter written by the executive director of North Maine Woods stating that he had been misled by McBreairty and would not have signed the accord and satisfaction had he known the nature of the charges.  The court declined to dismiss the theft of services counts.

[¶11]   Additionally, at sentencing, McBreairty stated that he was made aware only after trial that the actual fish that led to McBreairty's fishing violation charge, Count 9, were in the State's possession.  He asserted that he had recently made a request to the State to view the fish but had not been able to do so.  McBreairty stated that he wanted to view the fish in the State's possession to

incorporate observations from a biologist in a motion for a new trial. The court declined to participate in the parties' arrangements regarding the fish at that time, and McBreairty never filed a motion for a new trial.

[¶12] The court ordered a sentence of unconditional discharge on Counts 10 and 12 (theft of services). *See* 17-A M.R.S. § 1346 (2015). On the remaining eleven counts, McBreairty was sentenced to concurrent sentences of thirty days or fewer followed by one year of administrative release. *See* 17-A M.R.S. §§ 1349-1349-F (2015). The conditions of his one year of administrative release following the jail time included the following: sixty days under house arrest immediately following the thirty days' jail time; and a prohibition from (1) seeking or obtaining a hunting or fishing license, (2) being under the influence of alcohol outside of his home, (3) receiving any gift of game or fish, and (4) accompanying others who were hunting. The court ordered him to forfeit the firearms received in evidence and imposed fines in excess of $10,000. McBreairty filed a timely notice of appeal. *See* 15 M.R.S. § 2115 (2015); M.R. App. P. 2.

## II. DISCUSSION

### A. Sufficiency of the Evidence

[¶13] McBreairty argues that there was insufficient evidence to support the convictions on Counts 10 and 12 (theft of services) (Class E), 17-A M.R.S. § 357(1)(A); Counts 14 and 16 (loaded firearm in a motor vehicle) (Class E),

8

12 M.R.S. § 11212(1)(B); and Count 17 (hunting under the influence) (Class D), 12 M.R.S. § 10701(1-A)(A)(2).

[¶14] When a criminal defendant challenges the sufficiency of the evidence to support a conviction, we review the evidence, and all reasonable inferences that may be drawn from that evidence, in the light most favorable to the jury's verdict to determine whether the jury rationally could have found each element of the charged offense beyond a reasonable doubt. *Jones*, 2012 ME 88, ¶ 7, 46 A.3d 1125; *State v. Milliken*, 2010 ME 1, ¶ 19, 985 A.2d 1152. "[T]he fact-finder is permitted to draw all reasonable inferences from the evidence, and decide the weight to be given to the evidence and the credibility to be afforded to the witnesses." *State v. Medeiros*, 2010 ME 47, ¶ 16, 997 A.2d 95.

[¶15] After careful review of the evidence presented, including the warden's testimony, we conclude that the jury could have rationally found each element of the challenged convictions proved beyond a reasonable doubt.

B.    Accord and Satisfaction

[¶16] McBreairty argues that the court abused its discretion in declining to dismiss the theft of services charges, Counts 10 and 12, because a written accord and satisfaction, signed by the injured party, had been provided to the court.[3]

_____

[3] McBreairty also argues that the court abused its discretion in declining to grant his motion to dismiss due to an additional accord and satisfaction purporting to release him from liability for Count 8 (criminal

[¶17]   Maine law allows a court to "dismiss certain criminal prosecutions without the acquiescence of the prosecuting attorney" when the injured party has agreed to the dismissal.  *State v. Young*, 476 A.2d 186, 187 (Me. 1984); *see also* 15 M.R.S. § 891 (2015).[4]   That a party has offered the court an accord and satisfaction signed by the injured party agreeing to dismiss the charges does not in itself, however, mandate dismissal of the charges.  A court may reject a proffered accord and satisfaction and refuse to dismiss criminal charges; when the court does so, its decision is reviewed for an abuse of discretion.  *See State v. Young*, 2001 ME 111, ¶ 1, 777 A.2d 830.

[¶18]   In this case, the accord and satisfaction offered by McBreairty was presented on the first day of trial.  The court acted well within its discretion in deferring action on the motion until after the jury's verdict.  By that time, the parties disputed the validity of the accord and satisfaction.  The State offered a letter written by the executive director of North Maine Woods, who had signed the original accord and satisfaction, explaining that he had been misled as to the nature of the charges against McBreairty.  The letter stated that if he had known the

---

trespass).  Because McBreairty was acquitted on this count, there was no need for the court to consider the accord and satisfaction, and the court did not abuse its discretion in declining to do so.

   [4]   The statute states: "When a person is charged with a Class D or Class E crime . . . for which the party injured has a remedy by civil action, if the injured party appears before the court and in writing acknowledges satisfaction for the injury, the court, on payment of all costs, may dismiss the charge." 15 M.R.S. § 891 (2015).

nature of the charges, he would not have signed the accord and satisfaction. Due to the lack of clarity regarding the validity of the accord and satisfaction offered, the court did not abuse its discretion in allowing the convictions on Counts 10 and 12 (theft of services) to stand.[5]

C.     Discovery Violations

[¶19]  McBreairty next argues that the State violated the discovery rules, and that he was therefore denied a fair trial, when the State did not, during discovery, produce the actual fish, causing McBreairty to be prejudiced because his witness was forced to testify using "fuzzy" photographs rather than the actual fish. For a jury verdict to be overturned on appeal based on an alleged discovery violation, the alleged violation must have prejudiced the defendant to the extent that it deprived him or her of a fair trial. *State v. Reese*, 2010 ME 30, ¶ 14, 991 A.2d 806.

[¶20]  On this record, there is no indication that McBreairty sought to have the State produce the fish before or during the trial, nor did McBreairty move for a new trial on this basis notwithstanding his suggestion to the court that he would do so after entry of the verdict; thus the argument has not been preserved, and any review is constrained to obvious error. M.R. Crim. P. 52(b). To show obvious error, the defendant must first demonstrate that there is "(1) an error, (2) that is

---

[5]  We note that the court entered an unconditional discharge on those two charges.

plain, and (3) that affects substantial rights." *State v. Pabon*, 2011 ME 100, ¶ 29, 28 A.3d 1147.

[¶21]  At the time of discovery, the rules of criminal procedure required the State to produce *upon request* "[a]ny . . . tangible objects . . . which are material to the preparation of the defense or which the attorney for the state intends to use as evidence in any proceeding or which were obtained or belong to the defendant." M.R. Crim. P. 16(b)(1), (2)(A).  McBreairty filed a general request for any physical evidence "material to the preparation of the defense."

[¶22]  There is no dispute that the State produced photographs of the fish during discovery but did not turn over the actual fish.  The State contends that it provided McBreairty notice in the warden's report, which had been produced during discovery, that it still had possession of the fish, and that if McBreairty had wanted access to the fish, he should have asked for it.  McBreairty denies having received any pretrial notice that the State had the fish in its possession, which he claims caused him prejudice.

[¶23]  McBreairty did not file a motion or provide an adequate record to support the contention that any discovery violation took place.  Moreover, the record is inadequate to support the contention that McBreairty was prejudiced by the failure of the State to produce the actual fish.  Although McBreairty mentioned the existence of the fish during sentencing and indicated that he planned to file a

motion for a new trial, he did not do so. It is impossible for us to conclude on this record that a discovery violation occurred or that it prejudiced McBreairty. Thus, McBreairty has not demonstrated obvious error.

D.    Prosecutorial Misconduct in Closing Statement

[¶24]   Finally, McBreairty argues that a curative instruction should have been provided after the State argued a fact not in evidence in its closing argument.

[¶25]   "When an objection has been made to a prosecutor's statements at trial, we review to determine whether there was actual misconduct, and, if so, whether the trial court's response remedied any prejudice resulting from the misconduct." *State v. Dolloff*, 2012 ME 130, ¶ 32, 58 A.3d 1032 (citations omitted). "The line separating acceptable from improper advocacy is not easily drawn; there is often a gray zone." *United States v. Young*, 470 U.S. 1, 7 (1985). "The central question is whether the [prosecutor's] comment is fairly based on the facts in evidence." *State v. Pendexter*, 495 A.2d 1241, 1241 (Me. 1985).

[¶26]   The misconduct alleged here is "[m]isrepresenting material facts in the record or making statements of material fact unsupported by any evidence." *Dolloff*, 2012 ME 130, ¶ 42, 58 A.3d 1032. In this case, the State argued that the impeached witness "was convicted basically of lying in the past *trying to protect a friend*." (Emphasis added.) The statement regarding protecting a friend was

unsupported by evidence and went beyond the bare facts of the conviction presented at trial.

[¶27] We must therefore determine whether any prejudice resulted from the misstatement, or instead if the error was harmless. *Dolloff*, 2012 ME 130, ¶ 32, 58 A.3d 1032; M.R. Crim. P. 52(a). Harmful error is error that "was sufficiently prejudicial to have affected the outcome of the proceeding." *Pabon*, 2011 ME 100, ¶ 34, 28 A.3d 1147. "We determine the effect of error by looking to the totality of the circumstances, including the severity of the misconduct, the prosecutor's purpose in making the statement (*i.e.*, whether the statement was willful or inadvertent), the weight of the evidence supporting the verdict, jury instructions, and curative instructions." *Dolloff*, 2012 ME 130, ¶ 33, 58 A.3d 1032 (quotation marks omitted). The State carries the burden of persuasion on appeal when we review for harmless error. *Id.* ¶ 34.

[¶28] Here, the misstatement made by the State was not material to any element of a crime. The misstatement bore on the witness's credibility, which had already been undermined during trial because the witness's conviction for "lying" was already in evidence. The only additional fact related to the circumstances of the crime.[6] There was more than sufficient evidence admitted at trial for the jury to

---

[6] There is no allegation that the additional fact was inaccurate, only that it had not been brought out in testimony. It is possible that the misstatement was inadvertent, considering that the State did ask the witness during cross-examination whether she would lie for a friend.

14

rationally find each element of the crimes proved beyond a reasonable doubt. The court also provided a general instruction reminding the jurors that closing arguments are not evidence, and that their verdict should be "governed by their own recollection of the evidence."

[¶29] In this context, the prosecutor's reference to the additional fact, and the court's subsequent decision not to issue a curative instruction, does not demonstrate prejudice sufficient to affect the outcome of the proceedings, and does not require us to vacate the convictions.

The entry is:

> Judgment affirmed.

---

**On the briefs:**

Alan F. Harding, Esq., Hardings Law Office, Presque Isle, for appellant Carter McBreairty

James Mitchell, Asst. Dist. Atty., Prosecutorial District No. 8, Caribou, for appellee State of Maine

**At oral argument:**

Alan F. Harding, Esq., for appellant Carter McBreairty

Todd R. Collins, District Attorney, Prosecutorial District No. 8, Caribou, for appellee State of Maine