MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2017 ME 184
Docket:       Ken-16-572
Submitted
  On Briefs:  June 29, 2017
Decided:      August 22, 2017

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

STATE OF MAINE

v.

SAMANTHA SOUTHER

MEAD, J.

[¶1]   Samantha Souther appeals from a judgment of conviction of operating under the influence (Class D), 29-A M.R.S. § 2411(1-A)(A) (2016), entered by the trial court (Kennebec County, *Fowle, J.*) following a jury trial. Souther contends that the court abused its discretion in its pretrial ruling excluding her proposed expert testimony as to her peak blood alcohol concentration at the time that she was driving. Concluding that Souther failed to present the court with any proper basis upon which to admit the proffered evidence, we affirm the judgment.

## I. BACKGROUND

[¶2]  "Viewing the evidence in the light most favorable to the State, the jury could rationally have found the following facts beyond a reasonable doubt." *State v. Rourke*, 2017 ME 10, ¶ 2, 154 A.3d 127.

[¶3]  On April 12, 2016, Maine State Trooper Greg Stevens responded to a report of an erratic driver.  Another driver had called 9-1-1 after seeing Souther's vehicle swerve several times and nearly veer under a truck. Trooper Stevens observed Souther's vehicle drift between lanes and initiated a traffic stop.  When he approached Souther's vehicle, he noticed the smell of intoxicants coming from her car and observed that her eyes were glassy and bloodshot, her speech was slurred and deliberate, and she fumbled with her paperwork.  He also observed unopened beer cans in the vehicle and an open sixteen-ounce can of beer on the floor between Souther's feet.  Trooper Stevens administered three field sobriety tests and found indications of impairment on each test.  He arrested Souther for operating under the influence.  *See* 29-A M.R.S. § 2411(1-A)(A).

[¶4]  The complaint against Souther alleged only that she "did operate a motor vehicle while under the influence of intoxicants," *see id.*

§ 2411(1-A)(A)(1);[1] it did not allege the statutory alternative that she operated "[w]hile having an alcohol level of 0.08 grams or more of alcohol per 100 milliliters of blood or 210 liters of breath," *id.* § 2411(1-A)(A)(2). A one-day jury trial was held on December 22, 2016. Prior to trial, Souther proposed a stipulation as to her peak blood alcohol content at the time that she was driving and sought to admit expert testimony that, applying the Widmark formula,[2] a 115-pound female who consumed one sixteen-ounce beer (the size of the open container that was between Souther's feet when she was stopped) with about a 5% alcohol content would have a peak blood alcohol concentration of 0.05%. She argued that this evidence would be relevant to the issue of impairment and noted that Maine law prescribes presumptions of impairment or non-impairment for certain blood alcohol levels. *See* 29-A M.R.S. § 2432 (2016). The State asserted that it had already stipulated that it would not seek to admit evidence of a blood alcohol test result[3] and argued that it would confuse the

---

[1] As we have held, "[a] person is under the influence if the person's physical or mental faculties are impaired however slightly or to any extent by the substance or substances that the person consumed." *State v. Atkins*, 2015 ME 162, ¶ 1, 129 A.3d 952.

[2] "The Widmark formula produces an estimate of a person's blood alcohol content based upon the absorption and elimination rates of alcohol in the human body." Franklin J. Hogue & Laura D. Hogue, *Criminal Law*, 54 Mercer L. Rev. 199, 228 (2002).

[3] Although the record is silent on the reasons, in its brief, the State explains that the test was not administered correctly.

4

jury "to be given a number" when the only issue was whether or not Souther was impaired.

[¶5]   The court determined that Souther's proposed expert testimony would be excluded.  It explained:

> [J]ust so that the . . . parties are clear on my finding, it wasn't so much that there wasn't any relevance to this information, I thought it had the potential to confuse the jury and to prejudice one side or the other.  I'm not sure that—this is an impairment case, this is not an excessive blood alcohol level case, this is an impairment case. This information might very well—I could see this information helping the [S]tate or helping the defense.  And because there's no bench line, there is no objective measure that the jury is going to be told about, the 0.08 or the point whatever the test was that the parties have agreed to be stricken, I think that . . . under a Rule 403 determination, that analysis, . . . the potential for confusion for either side outweighs any probative value of the evidence.

Souther then argued that pursuant to 29-A M.R.S. § 2432(1)—which she summarized as providing that "[i]f a person has an alcohol level of 0.05 grams or less of alcohol, it [is] prima [facie] evidence that the person is not under the influence of alcohol"—evidence that Souther's blood alcohol level was below 0.05% is "by statute . . . the type of evidence that can be presented because it is informative on the issue of impairment, on whether someone is under the influence."  Souther indicated that she would have sought a jury instruction on this point.  The court responded:

We're not going to hear any evidence today, as I understand it, as to what the blood alcohol level is, this is an impairment case. If there were a test result, be it 0.09, 0.14, whatever the test result would have been, all of this would have been highly relevant and highly admissible. But this is an impairment case. This determination by the jury is going to be made upon objective evidence presented concerning Ms. Souther's condition at the time that she was driving.

[A]nd so . . . I understand the argument . . . but again, Rule 403, I think the potential for confusion to the jury and the prejudicial impact on either party to this case outweighs the probative value. The jury is not going to have any test result or benchmark with which to measure [the expert]'s testimony, so my decision on that stands but your issue is preserved.

[¶6] The jury found Souther guilty of operating under the influence. The court entered judgment on the conviction and imposed an $800 fine and ordered that her license be suspended for 150 days. Souther timely appealed. *See* M.R. App. P. 2.

## II. DISCUSSION

[¶7] Maine Rule of Evidence 403 provides that a court may exclude otherwise relevant evidence "if its probative value is substantially outweighed by a danger of . . . unfair prejudice [or] confusing the issues." "We review a trial court's rulings on relevance for clear error, and rulings on admissibility for an abuse of discretion." *State v. Maine*, 2017 ME 25, ¶ 23, 155 A.3d 871 (alteration, citation, and quotation marks omitted). "A court abuses its discretion in ruling

6

on evidentiary issues if the ruling arises from a failure to apply principles of law applicable to a situation resulting in prejudice." *Id.* (quotation marks omitted).

[¶8] We have upheld the admissibility of expert testimony applying the Widmark formula in *State v. Tibbetts*, 604 A.2d 20, 21-22 (Me. 1992). In that case, Tibbetts was charged with operating a motor vehicle while under the influence of intoxicating liquor *or* while having a blood alcohol concentration of 0.08% or more after he crashed his vehicle into a guardrail. *Id.* at 21. A breath test administered about two hours after the accident measured his blood alcohol concentration at 0.18%. *Id.* At trial, "[t]here was conflicting evidence as to whether Tibbetts had consumed any alcohol between the time of the accident and the arrival of the trooper." *Id.* Over Tibbetts's objection, the State presented an expert witness who opined that, according to the Widmark formula and using "estimated values . . . to account for Tibbetts's weight and the alcohol he allegedly consumed before and after the accident," Tibbetts's blood alcohol concentration at the time of the accident was between 0.14% and 0.16%. *Id.* at 21-22. We held that the testimony was relevant and helpful because "Tibbetts's blood-alcohol content *at the time of the accident* was the central question before the jury, and the significance of a 0.18% test result obtained *approximately two hours after the accident* was an issue of

consequence in the case." *Id.* at 22 (emphases added). We therefore concluded that the court did not abuse its discretion by admitting the expert opinion. *Id.* at 22.

[¶9]  In a case decided after *Tibbetts*, we held that the trial court did not abuse its discretion by *excluding* expert testimony applying the Widmark formula. *See State v. Grigsby*, 666 A.2d 503, 505 (Me. 1995). Unlike in *Tibbetts*, Grigsby had been charged only with operating a motor vehicle while under the influence of intoxicating liquor, and the State offered no evidence of a blood alcohol test result because a test had not been administered. *Id.* at 504. Grigsby sought to admit expert testimony "as to a range of the level of Grigsby's blood-alcohol at the time of the arrest," but the expert could not offer an opinion as to Grigsby's probable level of impairment based on that range. *Id.* at 505. The State objected to the proposed testimony pursuant to Rule 403, arguing that "it would confuse the issues in the case," and the court sustained the objection. *Id.*

[¶10]  On appeal, we concluded that the court did not abuse its discretion by excluding the expert testimony because Grigsby's offer of proof was insufficient to establish a link between the Widmark formula evidence and whether Grigsby was, in fact, impaired—which was the only issue for the jury

to decide. *See id.*; *see also State v. Richford*, 519 A.2d 193, 194-96 (Me. 1986) (concluding, in a case were the defendant was charged only under the "impairment" prong of the OUI statute after he refused a blood alcohol test, that the court did not abuse its discretion by sustaining the State's relevance objection to the defendant's proffered Widmark formula evidence when the offer of proof did not include any information about his blood alcohol level or "the degree of impairment [he] would have suffered given that range").

[¶11]  Similar to *Grigsby*, the sole issue in this case was whether Souther was impaired, and her offer of proof did not state that her proposed expert could testify as to how she would have been affected by the blood alcohol concentration that her expert estimated that she had at the time she was driving.  Souther's offer of proof therefore was insufficient to establish a nexus between the Widmark-based theoretical blood alcohol level and the issue of impairment.

[¶12]  Perhaps recognizing that deficiency, Souther argues that the missing element in her offer of proof is resolved by the application of 29-A M.R.S. § 2432(1), which provides, "If a person has an alcohol level of 0.05 grams or less of alcohol per 100 milliliters of blood or 210 liters of breath, it is prima facie evidence that that person is not under the influence of alcohol."

Construing an earlier version of section 2432, however, we have held that evidence of a defendant's blood alcohol concentration "has procedural effect" under the statute *only* when the blood alcohol level that is the predicate for the prima facie effect has been established by "a scientific test administered contemporaneously with an arrest." *Grigsby*, 666 A.2d at 505 (quotation marks omitted) (interpreting 29 M.R.S.A. § 1312(5)(A) (Supp. 1994) (*repealed by* P.L. 1993, ch. 683, § A-1 (effective Jan. 1, 1995))); *see also Richford*, 519 A.2d at 196 n.1. Here, because the evidence did not include scientific blood alcohol test results as required by *Grigsby*, section 2432 is unavailable to provide the missing element in Souther's offer of proof.

[¶13] In sum, because Souther's offer of proof did not include a proffer of evidence that would demonstrate how her theoretical blood alcohol content would have affected her mental or physical faculties, *see State v. Atkins*, 2015 ME 162, ¶ 1, 129 A.3d 952, and because section 2432 is inapplicable, the court did not err in excluding the expert testimony regarding the Widmark formula.[4]

The entry is:

> Judgment affirmed.

---

[4] We do not find persuasive Souther's suggestion that the court's exclusion of this evidence denied her the constitutional right to present a complete defense. *See State v. Adams*, 2015 ME 30, ¶ 18, 113 A.3d 583; *see also State v. Grigsby*, 666 A.2d 503, 504 (Me. 1995).

Darrick X. Banda, Esq., Law Offices of Ronald W. Bourget, Augusta, for appellant Samantha Souther

Maeghan Maloney, District Attorney, Tyler J. LeClair, Asst. Dist. Atty., and Mary-Ann Letourneau, Stud. Atty., Prosecutorial District IV, Augusta, for appellee State of Maine

Kennebec County Unified Criminal Docket docket number CR-2016-835
FOR CLERK REFERENCE ONLY