MAINE SUPREME JUDICIAL COURT                           Reporter of Decisions
Decision:    2025 ME 79
Docket:      Pen-24-467
Argued:      June 5, 2025
Decided:     August 19, 2025

Panel:       STANFILL, C.J., and MEAD, HORTON, CONNORS, LAWRENCE, DOUGLAS, and LIPEZ, JJ.

STATE OF MAINE

v.

DAVID MACKENZIE

LIPEZ, J.

[¶1]   David MacKenzie appeals from a judgment of conviction for aggravated operating under the influence (OUI), aggravated assault, and leaving the scene of a motor vehicle accident entered by the trial court (Penobscot County, *A. Murray, J.*) after a jury trial.  MacKenzie contends that the court abused its discretion when it admitted in evidence expert testimony about his estimated blood-alcohol concentration (BAC) offered to prove that he "[o]perate[d] a motor vehicle . . . [w]hile having an alcohol level of 0.08 grams or more of alcohol per 100 milliliters of blood or 210 liters of breath," 29-A M.R.S. § 2411(1-A)(A) (2025).  MacKenzie also argues that the evidence was insufficient to support his conviction for aggravated assault.  We affirm the judgment.

## I. BACKGROUND

### A.    Facts

[¶2]  "Viewing the evidence in the light most favorable to the State, the jury could rationally have found the following facts beyond a reasonable doubt."  *State v. Souther*, 2017 ME 184, ¶ 2, 169 A.3d 927 (quotation marks omitted).

[¶3]  On July 15, 2023, over the course of about six hours, MacKenzie consumed twelve twenty-two-ounce Michelob Ultra beers (equivalent to twenty-two twelve-ounce beers)[1] and a basket of boneless chicken wings at a restaurant in Brewer.  Shortly after 8:30 p.m., MacKenzie left the restaurant, got into his vehicle, and drove away alone.

[¶4]    Less than ten minutes later, MacKenzie struck an eighty-seven-year-old man who was pushing a wheelbarrow full of hedge clippings across the street.  The victim landed on MacKenzie's windshield, cracking it.  The victim was then carried on the hood of the car before falling to the pavement.  Witnesses to the collision heard MacKenzie shouting at the man to get off his car.  After hitting the victim, MacKenzie stopped only briefly before

---

[1]  Put another way, MacKenzie drank approximately two gallons of beer during his afternoon at the bar, which was captured on video.

leaving the scene of the accident. The victim sustained an open ankle fracture, a pelvic fracture, and injuries to his spine and spleen. The ankle fracture required surgery and a resulting lengthy recovery.

[¶5] Several calls to 9-1-1 alerted the police to the accident. One of those calls came from MacKenzie's phone, which automatically dialed 9-1-1 at 8:39 p.m. GPS data later obtained from MacKenzie's vehicle showed his car at the accident site at that time.

[¶6] The responding officers called in a crash reconstructionist, who concluded that MacKenzie was driving over the speed limit and had crossed into the opposite lane when his car hit the victim. The reconstructionist also opined that MacKenzie's alcohol consumption was a contributing factor to the crash.

## B. Procedure

[¶7] Several days after the accident, the police identified MacKenzie as the suspected driver. On July 21, 2023, the State charged him by criminal complaint with aggravated assault and leaving the scene of an accident involving serious bodily injury or death. On September 27, 2023, a grand jury indicted him on charges of aggravated criminal OUI (Class C), 29-A M.R.S. § 2411(1-A)(D)(1) (Count 1), aggravated assault (Class B), 17-A M.R.S.

§ 208(1)(A) (2025) (Count 2), and leaving the scene of an accident involving serious bodily injury or death (Class C), 29-A M.R.S. § 2252(5) (2025) (Count 3). The State sought and obtained a superseding indictment on March 27, 2024, charging the same three counts and adding a charge of OUI with one prior OUI conviction (Class D), 29-A M.R.S. § 2411(1-A)(B)(1) (Count 4). For each of the OUI charges, the State alleged in the alternative, as permitted by statute, that MacKenzie "operate[d] a motor vehicle while under the influence of intoxicants or while having an alcohol level of .08 grams or more of alcohol per 100 milliliters of blood or 210 liters of breath." *See id.* § 2411(1-A)(B)(1), (D)(1).

[¶8] Because of the delay between the accident and law enforcement's first contact with MacKenzie, the police were unable to perform a chemical test to determine his BAC at the time of the crash. The State informed MacKenzie prior to trial that it instead intended to offer a State chemist's opinion that according to the Widmark formula, which "produces an estimate of a person's blood alcohol content based upon the absorption and elimination rates of alcohol in the human body," *Souther*, 2017 ME 184, ¶ 4 n.2, 169 A.3d 927 (quotation marks omitted), MacKenzie's BAC exceeded .08 when he struck the victim.

[¶9]  MacKenzie moved in limine to exclude the chemist's opinion.  After a hearing at which the chemist testified that she estimated MacKenzie's BAC to be "around a [.]20" at the time of the accident, the court ordered that it would permit the State "to attempt to establish blood alcohol level by an opinion as opposed to a chemical test," but that the chemist should not "give an exact number."  The court also prohibited the State from relying on the statutory presumption set forth in 29-A M.R.S. § 2432(3) (2025) that a person with a BAC of .08 or more "is presumed to be under the influence of intoxicants."

[¶10]  At trial, the State chemist opined that at the time of the accident, MacKenzie's BAC would have been higher than .08, and that generally people with that level of alcohol in their system are impaired.

[¶11]  The jury found MacKenzie guilty of all charges.  MacKenzie timely filed a motion for a judgment of acquittal, which the court denied after a hearing.  *See* M.R.U. Crim. P. 29(b).  The court sentenced MacKenzie to six years' imprisonment with all but fifteen months suspended and three years of probation on Count 2, and concurrent terms of fifteen months' imprisonment

6

each on Counts 1[2] and 3.[3]    MacKenzie timely appealed.    *See* M.R.

App. P. 2B(b)(2)(B).

## II.  DISCUSSION

### A.    Admission of BAC Opinion Testimony

[¶12]   MacKenzie argues that the court erred in two ways when it

admitted the testimony of the State chemist who relied upon the Widmark

formula for her conclusions: first, that a chemical test is the statutorily-required

method of proving a defendant's BAC; and second, that the chemist's estimate

was unreliable because the Widmark formula is not sufficiently specific to

MacKenzie.  We address each argument in turn.

#### 1.    The OUI statutes do not preclude admission of opinion testimony to prove BAC.

[¶13]    First, MacKenzie contends that the statutes criminalizing

operating under the influence permit a chemical test—and only a chemical

test—to prove BAC.  He invokes sections 2431 and 2432 of Title 29-A, which

---

[2]  The court merged Count 4—OUI with a prior OUI conviction—with Count 1 for purposes of sentencing.

[3]  The written judgment and commitment does not reflect the concurrent nature of the sentences imposed for Counts 1 and 3.  Where, as here, "there is discrepancy between the oral pronouncement of sentence and the written judgment and commitment, the oral pronouncement of sentence controls."  *State v. Brydon*, 454 A.2d 1385, 1388 (Me. 1983); *see also State v. Stinson*, 424 A.2d 327, 333-34 (Me. 1981); *State v. Bradley*, 414 A.2d 1236, 1241 (Me. 1980).

outline evidentiary rules and presumptions applicable to OUI prosecutions. *See* 29-A M.R.S. §§ 2431, 2432 (2025); *see also State v. Beeler*, 2022 ME 47, ¶ 13, 281 A.3d 637 (discussing the evidentiary rules of section 2431); *Souther*, 2017 ME 184, ¶ 4, 169 A.3d 927 (explaining that section 2432 "prescribes presumptions of impairment or non-impairment for certain blood alcohol levels"). We accordingly analyze these provisions to determine whether they prohibit the use of opinion testimony to prove a defendant's BAC. *See* M.R. Evid. 402 ("Relevant evidence is admissible unless [a statute or rule] provides otherwise . . . ."); *State v. Atkins*, 2015 ME 162, ¶ 13, 129 A.3d 952 (same).

[¶14] "Statutory interpretation is a question of law that we review de novo." *State v. Beaulieu*, 2025 ME 4, ¶ 14, 331 A.3d 280 (quotation marks omitted). "[O]ur single goal is to give effect to the Legislature's intent in enacting the statute." *Id.* (quotation marks omitted). If the statutory language is clear when examined "in the context of the whole statutory scheme," we need go no further. *Id.* (quotation marks omitted). We review a trial court's "admission of evidence over an objection . . . for an abuse of discretion" and review the trial court's "underlying factual findings for clear error." *Beeler*, 2022 ME 47, ¶ 12, 281 A.3d 637 (quotation marks omitted).

[¶15]  We begin with an overview of the pertinent statutes.  The State charged MacKenzie with two counts of criminal OUI under 29-A M.R.S. § 2411, which provides that "[a] person commits OUI if that person . . . [o]perates a motor vehicle" (1) "[w]hile under the influence of intoxicants" *or* (2) "[w]hile having an alcohol level of 0.08 grams or more of alcohol per 100 milliliters of blood or 210 liters of breath." 29-A M.R.S. § 2411.[4]  The statute allows the State to plead alternatives, as it did here, and does not require the State to elect between the alternatives prior to submission to the factfinder.  *Id.* § 2411(2).  Section 2411 does not prescribe any particular method for proving that a person had a BAC above .08.  *Id.* § 2411.[5]

[¶16]  Section 2431 concerns "evidentiary alternatives in OUI cases," *State v. Tozier*, 2015 ME 57, ¶ 12, 115 A.3d 1240, and explicitly permits the admission in evidence of "[t]est results showing . . . alcohol level," 29-A M.R.S.

---

[4]  MacKenzie was convicted of violating section 2411(1-A)(B)(1) (Count 4), which applies where the State pleads and proves that the person operating under the influence has had one previous OUI conviction within a ten-year period, and section 2411(1-A)(D)(1) (Count 1), which applies where the person's operation under the influence causes serious bodily injury to another person.  *See* 29-A M.R.S. § 2411(1-A) (2025).

[5]  Section 2401 of Title 29-A defines "[a]lcohol level" as "either grams of alcohol per 100 milliliters of blood or grams of alcohol per 210 liters of breath," without reference to a chemical test. 29-A M.R.S. § 2401(2) (2025).

§ 2431(1).[6]  Finally, section 2432 charts legal presumptions that may apply, corresponding to the defendant's alcohol level.  *Id.* § 2432.[7]  In sum, the statutory scheme makes it a crime to operate a motor vehicle with a BAC of .08 or more, authorizes the use of a chemical test to prove alcohol level, and, when certain alcohol levels are present, entitles a party to invoke a presumption of intoxication or nonintoxication.

---

[6] Section 2431 also delineates rules governing the admissibility and use in evidence of chemical tests (subsection 2), the failure of a person to submit to a test (subsection 3), and certain statements by the accused (subsection 4).  29-A M.R.S. § 2431(2)-(4) (2025).

[7] Title 29-A M.R.S. § 2432 (2025) provides in full:

**Alcohol level; confirmed positive drug or metabolite test results; evidentiary weight**

**1. Level less than 0.05 grams.**  If a person has an alcohol level of 0.05 grams or less of alcohol per 100 milliliters of blood or 210 liters of breath, it is prima facie evidence that that person is not under the influence of alcohol.

**2. Level greater than 0.05 grams and less than 0.08 grams.**  If a person has an alcohol level in excess of 0.05 grams of alcohol but less than 0.08 grams of alcohol per 100 milliliters of blood or 210 liters of breath, it is admissible evidence, but not prima facie, indicating whether or not that person is under the influence of intoxicants to be considered with other competent evidence, including evidence of a confirmed positive drug or metabolite test result.

**3. Level of 0.08 grams or greater.**  In proceedings other than under section 2411, a person is presumed to be under the influence of intoxicants if that person has an alcohol level of 0.08 grams or more of alcohol per 100 milliliters of blood or 210 liters of breath.

**4. Confirmed presence of drug or drug metabolite.**  If a person has a trace amount of any drug or the metabolites of any drug within the person's blood or urine in accordance with the drug reporting rules, standards, procedures and protocols adopted by the Department of Health and Human Services, it is admissible evidence, but not prima facie, indicating whether that person is under the influence of intoxicants to be considered with other competent evidence, including evidence of alcohol level.

10

[¶17]  The statutes are silent, however, as to the use of expert opinion testimony to prove BAC.  Section 2431 by its plain language deems "[t]est results showing . . . alcohol level" to be "admissible"; the statute does not say that *only* test results are admissible, and we decline to interpret the statute's silence regarding other methods of determining BAC to preclude their admission.[8]

[¶18]  We addressed a comparable issue in *State v. Atkins*, 2015 ME 162, ¶¶ 3-6, 129 A.3d 952, a case involving a section 2411 OUI charge for intoxication by drugs rather than alcohol.  There, the defendant asserted that provisions in Title 29-A governing the use of drug recognition experts "require[d] that, when a defendant charged with OUI is alleged to have been intoxicated by a substance other than alcohol, the testimony of a drug recognition expert is necessary." *Id.* ¶ 14.  In affirming the trial court's decision to admit the arresting officer's testimony about his observations of the

---

[8] Although we have never considered whether the OUI statutes forbid use of the Widmark formula to prove BAC, we have previously held that the formula is relevant for that purpose. *See State v. Tibbetts*, 604 A.2d 20, 22 (Me. 1992).  In *Tibbetts*, a breath test administered approximately two hours after the accident at issue revealed that the defendant had a BAC of .18. *Id.* at 21.  To help resolve conflicting evidence about whether the defendant consumed alcohol between the time of his accident and administration of the test, the State offered an expert's opinion that pursuant to the Widmark formula, the defendant's BAC was between .14 and .16 when the accident occurred. *Id.*  We concluded that the expert's opinion was relevant and admissible to address the "central question before the jury"—the defendant's "blood-alcohol content at the time of the accident." *Id.* at 22.

defendant's impairment, we held that nothing in the drug recognition expert statute, either "directly or by implication," prohibited such testimony by nonexperts. *Id.* ¶ 15. We reach a similar conclusion regarding section 2431: although the statute identifies one method of proving BAC—a chemical test— it neither directly nor by implication forbids use of alternative reliable methods.

[¶19] We also reject MacKenzie's argument that because we previously have held that a chemical test is necessary to invoke the presumptions set forth in section 2432, a chemical test is the only permissible method of proving a defendant's BAC. We have explained that the statutory presumptions regarding impairment are unavailable absent "scientific blood alcohol test results[.]" *Souther*, 2017 ME 184, ¶ 12, 169 A.3d 927; *see also State v. Grigsby*, 666 A.2d 503, 505 (Me. 1995) (concluding that "evidence of an individual's blood-alcohol content has procedural effect under [the predecessor statute to section 2432] *only* when it is obtained as a result of a scientific test administered contemporaneously with an arrest." (quotation marks omitted)). We have never held, however, that the same is true for purposes of proving a violation of section 2411.[9]

---

[9] Our opinion in *State v. Taylor*, 1997 ME 81, 694 A.2d 907, is not to the contrary. There, we held that "using HGN [horizontal gaze nystagmus] results to *precisely* quantify blood alcohol content is

12

[¶20] Here, the trial court ably harmonized the applicable statutory provisions as well as our precedent to determine that although the State could offer the chemist's opinion testimony to prove MacKenzie's BAC, it could not use that same evidence to invoke the statutory presumption of intoxication.[10] We discern no error in the court's analysis.[11]

---

improper." *Id.* ¶ 13 (emphasis added). Relying upon the precursor statute to section 2411, we suggested that "the proper way to test for an *exact* blood alcohol level is by chemical analysis of blood, breath, or urine." *Id.* We reasoned that whereas a chemical test provides a reliable blood-alcohol level because it is "determined deductively from analysis of bodily fluids," the results of the HGN test are determined "inductively from observation of involuntary bodily movements," and therefore "lack[] scientific basis." *Id.* ¶¶ 13-14 (quotation marks omitted).

Because we were not called upon to decide whether a chemical test is the exclusive means to establish that a driver operated with a BAC of .08 or more, our observation about the "proper way" to test for BAC was dictum. *See Dictum*, Black's Law Dictionary (12th ed. 2024) ("An opinion by a court on a question that is directly involved, briefed, and argued by counsel, and even passed on by the court, but that is not essential to the decision and therefore not binding even if it may later be accorded some weight."). In any event, here, the trial court adhered to *Taylor*'s admonition that only a chemical test can provide an "*exact* blood alcohol level," 1997 ME 81, ¶ 13, 694 A.2d 907, by forbidding the chemist from precisely quantifying MacKenzie's BAC.

[10] We note that the presumption of impairment based on a BAC above .08 applies only "[i]n proceedings other than under section 2411." 29-A M.R.S. § 2432(3). Thus, the statute prohibits the State from invoking the presumption in a case such as this one, even where the State does offer in evidence the results of a chemical test.

[11] Although MacKenzie urges us to consider that "[a]llowing admission of the Widmark formula to prove a defendant's BAC would effectively do away with the requirements of breath and blood tests in cases where the State has evidence of the defendant's consumption, gender and weight," we do not find this argument persuasive. As the State noted in response, "given the choice between a chemical test . . . and an estimation of an individual's BAC based upon imperfect information, no State actor would choose the latter."

Further, we reiterate that although section 2431 provides that a positive test result for alcohol is admissible in evidence, the statute does not require use of a chemical test to prove a charge of criminal OUI.

### 2. The chemist's testimony regarding MacKenzie's estimated BAC was sufficiently reliable.

[¶21] Next, MacKenzie asserts that even if the applicable statutes permit the use of a Widmark formula-based estimate to prove BAC, the chemist's calculation in this case was insufficiently tailored to MacKenzie to be reliable.[12]

[¶22] "We review a court's foundational finding that expert testimony is sufficiently reliable for clear error and its ultimate decision on the admissibility of expert opinion testimony for an abuse of discretion." *State v. Williams*, 2020 ME 128, ¶ 25, 241 A.3d 835 (quotation marks omitted); *see also State v. Tibbetts*, 604 A.2d 20, 22 (Me. 1992) ("The trial court has scope of considerable breadth in deciding whether to admit opinion testimony of a defendant's blood-alcohol level, and its decision will be disturbed on appeal only on a clear showing of abuse of discretion." (quotation marks omitted)). To be admissible under Maine Rule of Evidence 702, "expert testimony must be relevant and must assist the trier of fact in understanding the evidence or determining a fact at issue." *Williams*, 2020 ME 128, ¶ 25, 241 A.3d 835 (quotation marks omitted). "Expert testimony is relevant if the proponent, among other requirements, has presented a sufficient demonstration of reliability." *Id.* ¶ 26 (quotation marks

---

[12] MacKenzie does not challenge the chemist's qualifications.

14

omitted). As germane here, "[c]ommon indicia of reliability include whether an expert's conclusion has been tailored to the facts of the case." *Id.* (quotation marks omitted).

[¶23]    In *Tibbetts*, we affirmed the trial court's admission of expert testimony relying on the Widmark formula over the defendant's objection that the testimony was irrelevant because "some of the expert's underlying assumptions were based on averages and estimates instead of accurate data particular to" the defendant. *Tibbetts*, 604 A.2d at 22. We explained that "[a]n expert's opinion is not required to be stated with any special degree of certainty; lack of certainty by the expert witness affects the weight accorded the testimony, not its admissibility."[13]  *Id.*  To the extent the expert's opinion

---

[13]  Other jurisdictions have reached similar conclusions.  *See, e.g.*, *State v. Vliet*, 19 P.3d 42, 62 (Haw. 2001) (relying on *Tibbetts* for the proposition that "[a]n expert's application of the Widmark formula to assess the defendant's BAC goes to the weight the jury should assign such testimony, rather than to the admissibility of the testimony itself" and noting that "[i]t may be error for a trial court to exclude expert testimony involving a Widmark calculation"); *State v. Fode*, 452 N.W.2d 779, 781-82 (S.D. 1990) (affirming the admission of chemist's testimony extrapolating defendant's BAC "based upon [the defendant's] body weight [and] the time period between the blood alcohol test and [the defendant's] arrest," even though chemist lacked information regarding what defendant drank and when).  *But see Evans v. State*, 558 S.E.2d 51, 56 (Ga. Ct. App. 2001) (upholding the exclusion of expert testimony when "there was an insufficient factual basis upon which [the expert] could accurately calculate [the defendant's] blood alcohol content using the Widmark formula" (alterations, quotation marks, and footnotes omitted)); *State v. Wolf*, 605 N.W.2d 381, 385 (Minn. 2000) (affirming exclusion of expert testimony because "[t]he record does not contain such basic information as when [the defendant] last consumed alcoholic beverages, the amount and type of alcohol consumed, or even his accurate height and weight at the time of arrest").

was too generalized, the defendant had an opportunity to explore that issue through cross-examination. *Id.*

[¶24] Our decision in *Tibbetts* makes quick work of MacKenzie's argument. The trial court appropriately permitted voir dire of the chemist regarding the basis for her opinion before deciding that the Widmark estimate was adequately tailored to the facts of this case. *See Williams*, 2020 ME 128, ¶ 26, 241 A.3d 835. Indeed, the security footage of MacKenzie imbibing at the bar provided the chemist with precise inputs: namely, that a 245-pound man consumed twelve twenty-two-ounce, 4.2% alcohol beers over the course of six hours. Despite the reliability of this data, MacKenzie argues that the chemist's BAC calculation was insufficiently specific to him because it did not account for variables such as his age, body mass index, height, whether he had eaten, and the rate at which he had consumed the alcohol. These supposed deficiencies, however, go to the weight rather than the admissibility of the testimony. *Tibbetts*, 604 A.2d at 22. Moreover, MacKenzie was permitted to, and in fact did, explore these issues through cross-examination.[14] *See id*.

---

[14] While the chemist acknowledged that her calculation did not account for Mackenzie's age or his body's unique response to alcohol, and assumed, inter alia, that MacKenzie consumed no food, she maintained that she was "comfortable with saying he would have been at least an [.]08" at the time of the accident.

[¶25]  Given the specificity of the information available to the chemist, we conclude that the court neither clearly erred nor abused its discretion when it admitted her opinion testimony.  *See Williams*, 2020 ME 128, ¶ 25, 241 A.3d 835.[15]

## B.    Sufficiency of the Evidence

[¶26]  Lastly, MacKenzie contends that the evidence was insufficient to prove that he (1) recklessly (2) caused bodily injury to the victim—necessary elements of the aggravated assault charge.  He asserts that his driving, even if under the influence, was neither reckless nor the cause of the collision, which occurred only because the victim was in the road at twilight.

[¶27]  "When a defendant challenges the sufficiency of the evidence supporting a conviction, we determine, viewing the evidence in the light most favorable to the State, whether a trier of fact rationally could find beyond a reasonable doubt every element of the offense charged."  *State v. Dorweiler*, 2016 ME 73, ¶ 6, 143 A.3d 114 (quotation marks omitted).  The jury "is permitted to draw all reasonable inferences from the evidence[] and decide the weight to be given to the evidence and the credibility to be afforded to the

---

[15]  In light of this conclusion, we do not address the State's alternative argument that any error in the admission of the evidence was harmless.

witnesses." *State v. McBreairty*, 2016 ME 61, ¶ 14, 137 A.3d 1012 (quotation marks omitted).

[¶28] "A person is guilty of aggravated assault if that person intentionally, knowingly or recklessly causes[] [b]odily injury to another that creates a substantial risk of death or extended convalescence necessary for recovery of physical health."[16] 17-A M.R.S. § 208(1)(A). "A person acts recklessly with respect to a result of the person's conduct when the person consciously disregards a risk that the person's conduct will cause such a result. . . . [T]he disregard of the risk, when viewed in light of the nature and purpose of the person's conduct and the circumstances known to the person, must involve a gross deviation from the standard of conduct that a reasonable and prudent person would observe in the same situation." 17-A M.R.S. § 35(3)(A), (C) (2025).

[¶29] Regarding the element of recklessness, although we have stated that operating under the influence is not reckless *per se*, *State v. Longley*, 483 A.2d 725, 731-32 (Me. 1984); *accord State v. Cheney*, 2012 ME 119, ¶ 39, 55 A.3d 473, we have also reasoned that an OUI violation "is relevant evidence

---

[16] There was no evidence or argument that MacKenzie intentionally or knowingly struck the victim with his car; we thus focus on the element of recklessness. There was also no dispute that the victim suffered bodily injury that resulted in extended convalescence.

[that] a jury may use in determining whether the operator of a motor vehicle is guilty of reckless driving," *State v. Rhoades*, 380 A.2d 1023, 1026 (Me. 1977).[17] The totality of the evidence in this case, when viewed in the light most favorable to the State, could permit a rational jury to conclude that MacKenzie drove after consuming a substantial amount of alcohol and operated his vehicle both over the speed limit and outside his lane—actions that could constitute "a gross deviation from the standard of conduct that a reasonable and prudent person would observe" under the circumstances. 17-A M.R.S. § 35(3)(C). *See Cheney*, 2012 ME 119, ¶ 40, 55 A.3d 473 (holding that evidence that defendant drove while intoxicated and crossed the centerline of the road before striking the victim sufficed to prove reckless conduct).

[¶30] Regarding the cause of the victim's injuries, this same evidence, combined with body camera footage and witness testimony addressing the lighting conditions just after the accident, could allow the jury to conclude that but for his intoxicated, reckless driving, MacKenzie could have avoided hitting the victim. Although MacKenzie points out that the jurors heard expert

---

[17] *State v. Rhoades*, 380 A.2d 1023, 1026 (Me. 1977), cites to 29 M.R.S.A. § 1312, which is the predecessor statute to 29-A M.R.S. § 2411. *See* P.L. 1993, ch. 683, § 2401(9) (effective July 14, 1994) (codified at 29-A M.R.S. § 2401(9) (2025)) (providing that an "'OUI conviction' means a conviction for (A) A violation of section 2411; . . . [or] (C) Violation of former Title 29, section 1312, subsection 10").

testimony that he displayed normal reaction time and would have been unable to perceive the victim given the time of night, the jury was not required to accept these opinions, particularly in the face of countervailing testimony that MacKenzie was outside his lane and impaired by alcohol. *See McBreairty*, 2016 ME 61, ¶ 14, 137 A.3d 1012.

[¶31]  Finally, the victim's presence in the road does not foreclose a conviction so long as the jury could have concluded that he would not have been injured but for MacKenzie's conduct. *See* 17-A M.R.S. § 33(1) (2025). ("[W]hen causing a result is an element of a crime, causation may be found when the result would not have occurred but for the conduct of the defendant, operating either alone or concurrently with another cause."). For the reasons just described, there was ample evidence to support that determination. *Cf. State v. McLean*, 2002 ME 171, ¶¶ 18-19, 815 A.2d 799 ("A motorcycle crash at a high rate of speed that occurs when the operator is impaired by alcohol clearly is sufficient to cause serious bodily injury, regardless of whether a helmet may have acted to prevent or to lessen the extent of the injuries.").

[¶32]  Viewing the evidence in the light most favorable to the State, we conclude that the jury rationally could find beyond a reasonable doubt every element of aggravated assault.

The entry is:

> Judgment affirmed.  Remanded to the trial court to correct the judgment and commitment to accurately reflect the concurrent nature of MacKenzie's sentences.

---

Hunter J. Tzovarras, Esq. (orally), Bangor, for appellant David MacKenzie

R. Christopher Almy, District Attorney, and Mark A. Rucci, Asst. Dist. Atty. (orally), Prosecutorial District V, Bangor, for appellee State of Maine

Penobscot County Unified Criminal Docket docket number CR-2023-2111
FOR CLERK REFERENCE ONLY